Rosa E. Fernández Sánchez y otros, demandantes y recurrentes, *v.* Francisco Fernández Rodríguez y otros, demandados y recurridos; Flor Casiano Báez, interventor.

*Número:* RE-94-251        *Resuelto:* 23 de enero de 1997

276

*Sergio Ortiz Atienza* y *Luis A. Amorós*, abogados de la parte demandante y recurrente; *Julio Enrique Pancorbo*, abogado de la parte demandada y recurrida; *Rolando Emmanuelli Sepúlveda* y *Flor Casiano Báez*, abogados de la parte interventora.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

Una vez más nos vemos obligados a intervenir en este caso que ha tenido un largo historial litigioso. El proceso comenzó en febrero de 1982 cuando la Sra. Rosa Esther Fernández Sánchez interpuso una demanda de filiación contra el Sr. Francisco Fernández, quien se negaba a reconocerla como hija. Decretada la filiación, el Sr. Francisco Fernández fue declarado incapacitado y se le nombró un tutor. Habiendo fallecido ya ambos protagonistas iniciales de este caso, continuaron el litigio —entre los aquí recurrentes— los nietos del señor Fernández y sus únicos herederos, con la ex tutora de su abuelo. Esperamos con nuestra intervención de hoy poner punto final al caso que comenzó hace más de catorce (14) años.

I

El 14 de abril de 1989 el entonces Tribunal Superior de Puerto Rico, Sala de Ponce, dictó sentencia parcial en el Caso Civil Núm. JAC-85-1731, *Rosa E. Fernández y otros v. Francisco Fernández y otros*, mediante la cual se declaró al Sr. Francisco Fernández "física y mentalmente incapacitado para regir su persona y administrar sus bienes" y se designó a la Sra. Genoveva Rodríguez tutora del Sr. Francisco Fernández.[1] Luego de prestar la fianza correspondiente, la Sra. Genoveva Rodríguez asumió la encomienda el 22 de abril de 1989. El tribunal determinó, además, en dicha sentencia, que la tutora haría un inventario de los bienes muebles e inmuebles del incapacitado, el cual debería ser presentado al tribunal dentro del término de cua-

---

[1] El foro de instancia escogió a la Sra. Genoveva Rodríguez Zamora como tutora del Sr. Francisco Fernández Rodríguez al determinar que "[la] Sra. Genoveva Rodríguez es la persona que más ligada ha estado al señor Fernández Rodríguez durante los últimos años, ha cuidado de su persona y le ha ayudado en la administración de sus bienes .... Los dos nietos de Don Francisco han sido sugeridos para el nombramiento de tutor, no tienen ningún vínculo afectivo ni relación alguna con Don Francisco, excepto el nexo de consanguineidad declarado por el Tribunal en una acción de filiación instada por la madre de éstos cuan[d]o ya ésta tenía alrededor de 60 años y sus hijos eran adultos". Sentencia parcial de 14 de abril de 1989 del Tribunal Superior, Sala de Ponce, en el caso de autos, págs. 2–3.

renta y cinco (45) días a partir de la fecha en que comenzase en el cargo.

El 12 de noviembre de 1989, siete (7) meses después del nombramiento de la tutora, falleció el Sr. Francisco Fernández. Sus nietos Ángel Luis Cruz Fernández y José Ángel Cruz Fernández fueron declarados como sus únicos y universales herederos. Anteriormente había fallecido la Sra. Rosa Esther Fernández Sánchez, madre de estos últimos, quien había sido declarada hija del finado, el Sr. Francisco Fernández.

El 1ro de marzo de 1990 la tutora presentó un informe final que contiene el inventario de los bienes muebles e inmuebles y los gastos en que había incurrido en el cuidado del Sr. Francisco Fernández. Dicho informe fue impugnado por los coherederos Ángel Luis Cruz Fernández y José Ángel Cruz Fernández. Luego de varios incidentes procesales, el 26 de agosto de 1993 el tribunal de instancia celebró una vista para dilucidar las objeciones al informe.

Los coherederos cuestionaron tres (3) partidas correspondientes a pagos que hiciera la tutora y que alegadamente ésta tenía interés personal en ellos, lo cual constituiría un hecho contrario a lo dispuesto en el Art. 215 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 789, el cual prohíbe a los tutores "hacerse pago, sin la aprobación del Tribunal Superior, de los créditos que les corresponden".

Los pagos impugnados son los siguientes:

a) Pago por la suma de $8,670.00 a nombre de L. & R. Corporation como reembolso de gastos efectuados por la tutora en beneficio del incapacitado. Dicho pago fue hecho el 3 de julio de 1989.

b) Pago por la suma de $11,076.63 a nombre de Sergio O. López (esposo de la tutora), el 13 de julio de 1989, por gastos incurridos en beneficio del incapacitado.

c) Pago por la suma de $5,745.97 a nombre de Sergio O. López, el 18 de julio de 1989, por gastos incurridos en beneficio del incapacitado.

La mayoría de los alegados gastos en beneficio del señor

Fernández Rodríguez eran médico-hospitalarios y éstos fueron *anteriores* a la designación de la señora Rodríguez Zamora como tutora del incapacitado. Tan es así, que el 27 de diciembre de 1988, Sergio O. López había solicitado al tribunal, mediante una moción suplementaria, el reembolso de $11,076.63.

El 11 de marzo de 1994 el tribunal de instancia dictó una sentencia parcial mediante la cual aprobó en su totalidad el informe final rendido por la tutora. Concluyó que las alegaciones de los demandantes recurrentes carecían de mérito a base de que no encontró "disposición legal alguna que le obligue a requerir ... autorización para hacer reembolso por concepto de pagos médico hospitalarios a beneficio del incapaz. Aún asumiendo que se requiera la autorización, restaría por determinar si la tutora actuó con malicia, dolo o fraude y si se causó daño al caudal del incapacitado, según [*Bravo et al. v. Bravo et al.*, 27 D.P.R. 444 (1919)]". Sentencia Parcial del Tribunal Superior, Sala de Ponce, de 11 de marzo de 1994, pág. 6.

Los coherederos Ángel Luis Cruz Fernández y José Ángel Cruz Fernández interpusieron un recurso de revisión y el 23 de junio de 1994 dictamos resolución y decidimos revisar la sentencia dictada.

II

La controversia que debemos resolver se circunscribe a determinar si son válidos los pagos que hiciera la Sra. Genoveva Rodríguez en calidad de tutora del Sr. Francisco Fernández a nombre de la Corporación L. & R., de la cual es parte, y a nombre de su esposo, el Sr. Sergio O. López, por gastos alegadamente incurridos en el cuidado y la atención que brindaran al señor Fernández antes de ser nombrada tutora.

Los textos legales no suelen definir la tutela, sino que se limitan a expresar la razón de su existencia. En este sen-

tido, el Art. 167 del Código Civil, 31 L.P.R.A. sec. 661, indica que "[e]l objeto de la tutela es la guarda de la persona y bienes, o solamente de los bienes, de los que, no estando bajo la patria potestad, son incapaces de gobernarse por sí mismos".

■ "Parafraseando esta descripción legal", Puig Peña define la tutela como "aquella institución jurídica que tiene por objeto la protección y cuidado de la persona o patrimonio de los que por su incapacidad legal están imposibilitados de gobernarse a sí mismos."([2]) De esta definición se infieren varias consideraciones:

1.a La tutela es una institución jurídica, es decir, la integran un conjunto de normas y preceptos armónicamente enlazados y definitivamente establecidos, que estructuran ese designio importantísimo de la asistencia normal de los jurídicamente incapaces. Esta institución es desde luego social, porque afecta a uno de los puntos más importantes del agregado humano que integra el cuerpo político llenando uno de los vacíos que en el mismo se observan.

2.a Esta institución se crea y organiza en las leyes para cuidar de la persona o patrimonio de un tercero. Es, pues, una institución de defensa, de amparo ... o protección, similar ... a la patria potestad, con la que tiene muchos rasgos comunes, pero de la cual se diferencia principalmente en el diverso fondo que les da vida, pues en la patria potestad sólo hay una relación normal de padre a hijo; en la tutela hay una relación anormal de tutor a incapacitado, en la que faltan las bases de cariño de la primera. Por eso la ley, en lo concerniente a la tutela, previendo la condición de extraño del tutor o, por lo menos, la falta en éste del intenso vínculo familiar que puede existir, exige que se fijen con mayor rigor los límites de la autoridad tutelar y que se constituya un control más decidido de la misma. [Resulta así una institución en que se destaca fundamentalmente la atribución de unos poderes en régimen, lo que provoca que se destaque como esencial el interés de la persona tutelada, lo cual

---

([2]) F. Puig Peña, *Compendio de Derecho Civil español*, 3ra ed. rev., Madrid, Ed. Pirámide, 1976, T. V, pág. 518. Véanse: E. Vázquez Bote, *Tratado teórico, práctico y crítico de derecho privado puertorriqueño*, San Juan, Ed. Butterworth, 1993, T. XI, pág. 409 *et seq.*; A. Majada, *La incapacitación, la tutela y sus formularios*, Barcelona, Ed. Bosch, 1985, pág. 17; F. Saura Martínez, *Incapacitación y Tuición*, Madrid, Ed. Tecnos, 1986, pág. 51 *et seq.*

explica el rigor con que el legislador regula la autoridad tutelar y su correspondiente control].(³)

Sobre el aspecto de la rigurosidad de la tutela señala Arturo Majada:

> Es obvio que una vez desaparecida la familia en sentido estricto, el Estado trata de suplir su falta con una mayor intervención por su parte y, por tanto, disponiendo de un mayor control de los afectados por la ausencia familiar. De este modo, si las normas que se ocupan de configurar el estatuto familiar gozan de una mayor flexibilidad, por suponer una menor ingerencia en su ámbito del poder estatal, las que regulan la institución tutelar someten a dicho organismo a un más intenso control legal, que incluso muchas veces puede llegar a pecar de casuístico; intervención estatal que no se realiza al modo que lo hace el Estado cuando es llamado a una herencia a falta de herederos testamentarios o legítimos, sino que, por el contrario, el poder estatal interviene cerca de estos organismos de una manera total, variando únicamente el grado de intensidad con que lo hace.(⁴)

■ La actividad propia del oficio de tutor es de gestión. El tutor no es más que el ejecutor de las funciones tutelares determinadas por la ley o las decretadas por el tribunal al establecer la tutela y su extensión. Esto no significa, naturalmente, que el tutor carezca de iniciativa y de facultades de decisión, cubriendo con ello el margen que a este respecto le conceden las leyes para la protección y defensa de la persona y los bienes del incapacitado.

El Código Civil establece las obligaciones del tutor antes de empezar la gestión, los deberes que surgen durante su desempeño y los que se originan una vez terminada la tutoría.

Una de las obligaciones anteriores al ejercicio del cargo es la obligación que tiene el tutor de "hacer inventario de todos los bienes muebles e inmuebles a que se extienda la tutela, dentro del término que al efecto le señale la sala

---

(³) Puig Peña, *op. cit.*, pág. 518; Vázquez Bote, *op. cit.*, pág. 410.

(⁴) Majada, *op. cit.*, pág. 18.

competente del Tribunal Superior". Art. 209 del Código Civil, 31 L.P.R.A. sec. 783(3). Por su parte, el Art. 196 (31 L.P.R.A. sec. 742(3)), establece que "[s]erán removidos de la tutela: ... [l]os que no formalicen el inventario en el término y de la manera establecida por la ley, o no lo hagan con fidelidad".

Así mismo, el Art. 210 del Código Civil, modificado por la Ley Núm. 75 de 3 de junio de 1983 (31 L.P.R.A. sec. 784), determina que:

> El tutor deberá hacer constar en el inventario el crédito que tuviese contra el pupilo. El tribunal lo requerirá con ese objeto y configurará esta circunstancia.
> El tutor que requerido al efecto por el tribunal, no incluyere en el inventario los créditos que tenga contra el menor o incapacitado, se entenderá que los renuncia, salvo que al tiempo del inventario no tuviera conocimiento de su existencia.

■ Para algunos civilistas la tutela se equipara a un cargo público, puesto que la función del tutor no es más que una manera que el Estado tiene para otorgar la protección al menor o incapacitado, deber éste que constituye uno de los más importantes del poder público y que más directamente se relaciona con la vida social, ya que sólo así se explica que el Estado reglamente la tutela de modo que su organización y funcionamiento no pueda ser modificado por voluntad de los particulares.[5]

En el caso ante nuestra consideración, de los documentos que obran en autos, surgen los hechos siguientes que no están en controversia:

> 1. El tribunal de instancia ordenó en su sentencia del 14 de abril de 1989, que la tutora, una vez presentada la fianza y prestado el juramento del cargo, haría el inventario de los bienes muebles e inmuebles del incapacitado el cual sería presentado al tribunal dentro del término de cuarenta y cinco (45) días a partir de la fecha de comienzo del cargo.

---

[5] Majada, *op. cit.*, pág. 21.

2. La tutora no presentó dicho inventario dentro del término que le fue señalado.

3. El 1 de marzo de 1990, casi un año y medio después de haber fallecido el incapaz, la tutora presentó un documento titulado "Informe Final de la Tutora" en el que describe en detalle el inventario de bienes muebles e inmuebles y todos los gastos en que incurriera por concepto de los cuidados que necesitó el tutelado.

De lo anterior se desprende que la tutora no cumplió con lo establecido en el Art. 209 del Código Civil, *supra*, lo cual le fue ordenado por el tribunal de instancia en la sentencia mediante la cual se le designó tutora.

■ Los civilistas clásicos como Manresa y Castán ponderan la extraordinaria importancia de esta operación contable y en consecuencia su lógica prioridad en relación con el desempeño de las obligaciones del cargo.[6] El inventario es una necesidad imprescindible en toda administración de bienes ajenos, pues sin él mal podrían cumplirse muchas de las exigencias de la tutela. El inventario servirá en su día para la justificación de la gestión de la tutoría. La obligación de formar el inventario es de carácter legal inexcusable, y constituye la base de las garantías del tutelado y de las responsabilidades del tutor.[7] De tal manera esto es así, que el Art. 196, *supra*, ordena que serán removidos de la tutela los tutores que "no formalicen el inventario en el término y de la manera establecida por la ley, o no lo hagan con fidelidad". A la luz de lo anterior, es forzoso concluir que el "Informe Final de la Tutora" no cumple con los requisitos que exige el Código Civil para el inventario.

■ Con respecto a las tres (3) partidas correspondientes a pagos que hiciera la tutora y que, según se alega, ésta tenía interés personal en éstos, es claro que no fueron incluidas en el inventario como lo ordena el Art. 210 del Código Civil, *supra*, pues el inventario no se hizo. ¿Qué efecto

[6] Majada, *op. cit.*, págs. 96–97.

[7] Majada, *op. cit.*, págs. 98–99.

puede tener esta situación para la solución de la controversia planteada? Como ya señaláramos anteriormente, el incumplimiento de la obligación de hacer inventario está expresamente sancionado con la remoción del cargo. Sanción que en este caso no fue aplicada, por lo cual debemos proceder como si los créditos cuestionados no hubiesen sido incluidos en el inventario. Comentando Manresa el Art. 267 del Código Civil español, equivalente al Art. 210 del Código Civil de Puerto Rico, *supra*, dice lo siguiente:

> Siendo el inventario una relación completa del caudal, con su activo o pasivo, es forzoso que contenga los créditos existentes contra el menor o incapacitado; y como el tutor es quien lo forma, natural es que incluya los suyos, si los tuviere, máxime porque esta declaración evitará reclamaciones posteriores, tal vez fraudulentas ... Nuestro Código, para hacer más segura y solemne esta pérdida y aquella obligación, exige el requerimiento, puesto que con él, a la vez que se recuerda al tutor su derecho, se corta de raíz todo viso de justicia en las reclamaciones posteriores en que aleguen olvido. No es posible alegar esta circunstancia cuando tan expresamente se hace memoria sobre el caso; y si a pesar de ella deja el tutor de consignar créditos suyos, muy lógico es que se presuman renunciados. ...
>
> ... [T]éngase bien entendido que para que el tutor pierda el derecho a reclamar sus créditos no inscritos en el inventario, es preciso que haya mediado y conste el requerimiento, hecho por cualquiera de las personas que menciona el Art. 267, puesto que no se establece orden de preferencia entre ellas. Si interviene Notario, a él mejor que a nadie corresponde el requerimiento, que se hará, claro es, en términos generales, puesto que lo ordinario ha de ser que aquél ignore si existen créditos y cuáles son. No habiéndose hecho requerimiento, el tutor puede, según la interpretación literal del texto, reclamar los créditos no inscritos en el inventario.(8)

██  Aunque en España el articulado análogo fue ob-

---

(8) J.M. Manresa y Navarro, *Comentarios al Código Civil español*, 7ma ed. rev., Madrid, Ed. Reus, 1957, T. II, págs. 435–436. Cabe señalar que el actual Art. 266 del Código Civil español, después de la reforma llevada a cabo por la Ley Núm. 13 de 1983, suprimió la necesidad del requerimiento al tutor previo a la presunción de renuncia de su crédito. No parece preciso, en efecto, ningún recordatorio al tutor acreedor que es, en definitiva, el obligado a realizar el inventario. Véanse: Saura Martínez, *op. cit.*, pág. 79; L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 5ta ed. rev., Madrid, Ed. Tecnos, 1984, Vol. I, pág. 271 *et seq.*

jeto de enmienda, todavía el texto del nuestro conserva el claro lenguaje a los efectos de que el requerimiento es necesario para que se entiendan como renunciados los créditos del tutor contra el incapaz. Entendemos que el hecho de que la tutora en el caso de autos no incluyera en el inventario los créditos que tenía contra el incapaz, no implica que los haya renunciado. Antes de entender que se han renunciado los créditos, se requiere que al tutor se le haya requerido que los incluyera en el inventario. Si una vez requerido, el tutor no revela los créditos de los que tenía conocimiento, el artículo le penaliza privándole del derecho a reclamarlos posteriormente. Entonces, y sólo entonces, podría privársele de ese derecho.

Por otro lado, el Art. 215 del Código Civil, *supra*, prohíbe a los tutores "hacerse pago, sin la aprobación del Tribunal Superior, de los créditos que le correspondan", y en el caso ante nos, la tutora hizo los pagos en cuestión sin aprobación previa del foro de instancia. Veamos, pues, el efecto de que la tutora en este caso haya violado una de las prohibiciones establecidas por el Art. 215 del Código Civil, *supra*.

Manresa expresa al comentar el Art. 275 del Código Civil español, similar al Art. 215 del Código Civil de Puerto Rico, *supra*, que "[a]dviértase, ante todo, que estos actos son *ipso jure* nulos, porque violan una prohibición legal, y puede aplicárseles de lleno el Art. 4to de[l] Código".[9] Majada señala que "[e]l incumplimiento por el tutor de su obligación de haber obtenido la previa autorización judicial para realizar cualquiera de los actos enumerados en los Arts. 271 y 272 [del Código Civil español actual], por tratarse de normas imperativas y en aplicación del Art. 6,3, del C. civil [actual], llevará consigo la nulidad absoluta del acto de que se trate".[10]

Díez-Picazo expresa, por su parte, que "[l]os actos reali-

---

[9] Manresa y Navarro, *op. cit.*, pág. 470.
[10] Majada, *op. cit.*, pág. 106.

zados por el tutor sin la preceptiva autorización judicial deben considerarse que adolecen de nulidad radical y absoluta, por ser contrarios a una norma imperativa, salvo, naturalmente, que las partes hayan condicionado su eficacia a la obtención de aquella aprobación, lo que hará que el acto o negocio jurídico, más que condicionado, sea incompleto o en período de formación".([11])

Puig Peña opina que cuando el tutor necesita una autorización o una formalidad especial para la realización de determinados actos, es indudable la nulidad de éstos. Sin embargo, considera este autor que tal nulidad sólo será una nulidad relativa, ya que se adopta en virtud de medidas de protección suplementaria para el menor o incapacitado, y tan sólo puede tener el carácter relativo de toda nulidad de protección. F. Puig Peña, *Compendio de Derecho Civil español*, 3ra ed. rev., Madrid, Ed. Pirámide, 1976, T. V, pág. 563. Rechazamos esta postura en el caso de autos, en el cual se cuestiona la validez de las actuaciones de un tutor en relación con el objeto de la tutela. Aquí nos enfrentamos a un delimitado marco de conducta, que la ley detalla con gran especifidad como condición a su autorización. De ahí que una trasgresión al referido marco normativo produzca la nulidad del acto.

■ Por lo tanto, a la luz tanto de las doctrinas antes expuestas, como de lo dispuesto en el Art. 4 del Código Civil([12]) y la prohibición *expresa* establecida por el Art. 215 del Código Civil aquí discutido, concluimos que los tres (3) pagos en cuestión en este caso son nulos.([13]) Concluimos, además, que son erróneos los fundamentos que usó el foro

([11]) Díez-Picazo y Gullón, *op. cit.*, pág. 274.

([12]) Éste mismo dispone que "[s]on nulos los actos ejecutados contra lo dispuesto por la ley, salvo los casos en que la misma ley ordene su validez". 31 L.P.R.A. sec. 4.

([13]) Para fines de este articulado, interpretamos que son créditos que corresponden al tutor todos aquellos en los que pueda decirse que éste tiene algún interés. Como en la situación de autos la tutora es parte de la sociedad de gananciales constituida con Sergio O. López y accionista de la corporación, a cuyos nombres se expidieron los pagos en cuestión, indiscutiblemente ella tiene interés en ellos.

de instancia para aprobar los pagos en cuestión en el caso ante nos. El tribunal de instancia determinó que después de haber examinado el requisito de la autorización judicial que requiere el Art. 212 del Código Civil, *supra*, no había disposición legal alguna que le obligue al tutor a requerir autorización para hacer reembolso en concepto de pagos médico-hospitalarios a beneficio del incapaz. Añadió el tribunal que, aun asumiendo que se requiera la autorización, restaría por determinar si la tutora actuó con malicia, dolo o fraude y si se causó daño al caudal del incapacitado según *Bravo et al. v. Bravo et al.*, 27 D.P.R. 444 (1919).

Se equivoca el foro de instancia. Como hemos visto, el Art. 215(2) del Código Civil, *supra*, sí requiere autorización judicial para que el tutor pueda hacer pagos de los créditos que le correspondan, y los pagos en cuestión no eran pagos directos por servicios médico-hospitalarios al incapaz, sino *reembolsos* por alegados gastos en que incurrió el esposo de la tutora y una corporación de la cual ella es parte, por servicios médico-hospitalarios brindados al incapaz. Además, no es aplicable en esta situación el requisito de "malicia, dolo o fraude y si se causó daño al caudal del incapacitado" del que se trató en *Bravo et al. v. Bravo et al.*, supra. El caso citado como precedente por el tribunal de instancia trataba de una acción de daños y perjuicios por negligencia, entablada contra un tutor, situación totalmente distinta a la del caso que está ante nuestra consideración.

Teniendo en cuenta el rigor con que el Legislador ha establecido el control del ejercicio de la tutela y las irregularidades ya señaladas en este caso, concluimos que la sentencia recurrida no debe prevalecer.

Por los fundamentos expuestos, *se dictará sentencia para revocar la sentencia parcial recurrida en la cual el tribunal sentenciador aprobó los tres (3) pagos aquí en cuestión y se devuelve el caso al foro de instancia para que*

*continúen los procedimientos de conformidad con lo expresado en esta opinión.*

El Juez Asociado Señor Negrón García emitió una opinión de conformidad. El Juez Asociado Señor Fuster Berlingeri no intervino.

— O —

Opinión de conformidad del Juez Asociado Señor Negrón García.

Suscribimos la opinión del Tribunal que dictamina la *nulidad absoluta* de los pagos realizados por la tutora, Sra. Genoveva Rodríguez, sin *aprobación previa del Tribunal*, y rechaza la tesis de *nulidad relativa* propugnada, entre otros, por el ilustre Federico Puig Peña. Opinión del Tribunal, págs. 258–259. En su sustrato, se trata de una situación fáctica y legal de contornos muy parecidos a la que surge en torno a la contratación de menores, sin autorización judicial.

Por esta razón, consideramos necesario expresarnos sobre el alcance de lo resuelto en *In re López Olmedo*, 125 D.P.R. 265 (1990), en cuanto a si un contrato de préstamo (evidenciado en un pagaré hipotecario al portador), otorgado por un menor ante notario, *sin autorización judicial*, es nulo o anulable.

*Primero*, en *In re López Olmedo*, supra, por estar los miembros de este Tribunal divididos, se emitió una *sentencia* acompañada de tres (3) ponencias.[1] Se resolvió, en lo aquí pertinente, que el pagaré hipotecario al portador y la escritura sobre constitución de hipoteca eran *nulas*.

---

[1] Opinión concurrente y disidente del Juez Asociado Señor Negrón García, a la cual se unieron los Jueces Asociados Señores Rebollo López y Ortiz; una opinión concurrente y disidente de la Juez Asociada Señora Naveira de Rodón, a la cual se unieron el Juez Presidente Señor Pons Núñez y el Juez Asociado Señor Alonso Alonso, y una opinión concurrente del Juez Asociado Señor Hernández Denton.

*Segundo*, cuatro (4) Jueces Asociados —Señores Rebollo López, Ortiz, Hernández Denton y el que suscribe— coincidieron en la nulidad, ipso jure, del contrato de préstamo, pues careció de previa autorización judicial.

*Tercero*, tres (3) miembros —la Juez Asociada Señora Naveira de Rodón, el entonces Juez Presidente Señor Pons Núñez y el Juez Asociado Señor Alonso Alonso— concluyeron que ningún contrato otorgado por un menor de edad por sí mismo tenía que cumplir con el trámite de la autorización judicial previa. Estimaron que ésta sólo se exige a los padres con patria potestad. Razonaron, que

> [e]l problema con los menores es de consentimiento y no de autorización. Aquellos contratos otorgados por menores de edad que no tengan suficiente uso de razón y capacidad para discernir se consideran inexistentes por carecer totalmente de consentimiento. Sin embargo, los otorgados por menores de edad suficiente como para tener uso de razón y "capacidad" para discernir no son nulos sino meramente anulables. (Énfasis suprimido.) *In re López Olmedo*, supra, págs. 281–282.

## I

Por imperativo, la decisión de hoy despeja cualquier duda y reestablece en nuestro ordenamiento jurídico, con carácter unánime de *stare decisis, la norma de que es nulo aquel contrato de préstamo (evidenciado en un pagaré hipotecario al portador) otorgado por un menor, sin previa autorización judicial.*