Irma Alemán Martínez y Gianessa Alicea Alemán, demandantes y peticionarias, *v.* Estado Libre Asociado de Puerto Rico, demandado y recurrido.

*Número:* AC-97-47      *Resuelto:* 1ro de mayo de 1998

*Hugo Rodríguez Díaz,* abogado de las peticionarias.

Acogido el recurso presentado como de *certiorari, se provee no ha lugar a éste.*

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada Señora Naveira de Rodón y los Jueces Asociados Señores Hernández Denton y Fuster Berlingeri expedirían. La Juez Asociada Señora Naveira de Rodón emitió un voto particular disidente.

*(Fdo.)* Isabel Llompart Zeno
*Secretaria del Tribunal Supremo*

— O —

Voto particular disidente emitido por la Juez Asociada Señora Naveira de Rodón.

Una vez analizado el recurso de autos, la mayoría de este Tribunal decidió denegarlo mediante una resolución. Por considerar que la actuación del Tribunal de Circuito de Apelaciones (en adelante el Tribunal de Circuito) fue errónea al determinar que a una acción instada al amparo del Art. 404 del Código Político de 1902, según enmendado, 3 L.P.R.A. sec. 422, le aplican los límites de cuantía impuestos por la Ley Núm. 104 de 29 de junio de 1955, según enmendada, 32 L.P.R.A. secs. 3077–3092a y 31 L.P.R.A.

sec. 5142, conocida como Ley de Reclamaciones y Demandas contra el Estado, expediríamos el recurso. Disentimos, pues, de la posición adoptada por la mayoría. Expondremos brevemente nuestro criterio.

## I

El 5 de enero de 1992 ocurrieron unas fuertes lluvias que provocaron la subida de las aguas del río La Plata. En consecuencia, la corriente del río destruyó el puente localizado en la carretera Núm. 173, kilómetro 3, de Cidra. El Gobierno del Estado Libre Asociado (en adelante el E.L.A.) no cerró esta carretera ni fijó los avisos adecuados que alertaran de la inexistencia del puente al que transitara por dicha vía.

El 4 de mayo de 1992, ciento veinte (120) días después de destruirse el puente, el Sr. Hernán Alicea Rodríguez transitaba por la carretera Núm. 173. Como no había vallas protectoras ni avisos adecuados, el señor Alicea Rodríguez se precipitó por el lugar donde estaba el puente, cayendo a unos treinta (30) pies aproximadamente. Fue llevado al Centro de Diagnóstico y Tratamiento de Cidra, desde donde fue referido al Hospital Regional de Caguas. Falleció unas seis (6) horas después de ocurrir el accidente.

La viuda del occiso y su hija instaron una demanda contra el E.L.A. Reclamaron los daños y perjuicios sufridos por ellas como consecuencia de la muerte del señor Alicea Rodríguez, además del lucro cesante. Asimismo, la hija Gianessa Alicea Alemán reclamó una partida, en acción hereditaria, por los sufrimientos y las angustias mentales de su padre desde el accidente hasta el momento de su muerte.

En su contestación a la demanda, el E.L.A. presentó varias defensas afirmativas. Una de éstas fue que las reclamaciones excedían los límites impuestos por la Ley Núm. 104, *supra*, en acciones en que el E.L.A. es demandado por daños y perjuicios.

Una vez celebrado el juicio, el 1ro de abril de 1997 el Tribunal de Primera Instancia dictó la sentencia. Declaró con lugar la demanda presentada y determinó que la responsabilidad del E.L.A. emanaba del Art. 404 del Código Político, *supra*. Asimismo, resolvió que a esta disposición legal no le aplicaban los límites de cuantía establecidos por el legislador.([1])

Inconforme con esta determinación, el E.L.A. presentó un recurso de apelación en el Tribunal de Circuito. Como único error, señaló que a las acciones instadas bajo el Art. 404 del Código Político, *supra*, le aplican los límites de responsabilidad cuando el E.L.A. es parte, según establecidos en la ley.

El 29 de agosto de 1997, el Tribunal de Circuito dictó una sentencia, mediante la cual revocó el dictamen del foro de instancia con relación a las cuantías otorgadas. Resolvió que la Ley Núm. 104, *supra*, es un estatuto de carácter general que incluye todas las reclamaciones por daños y perjuicios que se presentan contra de E.L.A. Por consiguiente, determinó que los límites de cuantía aplican a las acciones instadas al amparo del Art. 404 del Código Político, *supra*. Devolvió el caso al foro de instancia para que éste modificara las sumas otorgadas.

Oportunamente, las demandantes presentaron ante nos un recurso de apelación que fue acogido como uno de *certiorari*, por ser este último el indicado. Plantearon la comisión de un solo error; a saber:

> Erró el Tribunal de Circuito de Apelaciones al concluir que los límites de responsabilidad contenidos en la Ley [Núm.] 104

---

([1]) Específicamente, concedió las cantidades siguientes: a la señora Alemán Martínez, la suma total de ciento setenta y cinco mil dólares ($175,000) —cien mil dólares ($100,000) por los sufrimientos y angustias mentales, y setenta y cinco mil dólares ($75,000) por el lucro cesante— y a la joven Gianessa Alicea Alemán, la suma total de doscientos mil dólares ($200,000) —cien mil dólares ($100,000) por los sufrimientos y angustias mentales propios, veinticinco mil dólares ($25,000) por los sufrimientos y angustias mentales de su padre, y setenta y cinco mil dólares ($75,000) por el lucro cesante.

de 29 de junio de 1955, según enmendada[,] aplican a acciones bajo el Artículo 404 del Código Político de Puerto Rico.

A continuación discutiremos los fundamentos por los cuales entendemos que se debe expedir el *certiorari* presentado.

## II

La doctrina de la inmunidad del soberano ha sufrido transformaciones a lo largo de los siglos. La tendencia moderna ha sido limitarla y hasta eliminarla. Según varios comentaristas, por la restricción lenta y progresiva que ha sufrido la inmunidad soberana, ésta ha perdido su razón de ser. M.J. Pabón Cátala, *Comentarios en torno a la doctrina de inmunidad del Estado: Piñeiro v. E.L.A.*, 45 (Núm.) Rev. Jur. U.P.R. 79, 92 (1976), siguiendo a L.J. Jaffe, *Suits against Governments and Officers: Damage Actions*, 77 Harv. L. Rev. 209, 238 (1963). De otra parte, también se ha dicho que las sentencias dictadas contra el Estado no son la causa de los problemas económicos del Gobierno. Más bien, es conveniente para los ciudadanos y para el Estado que no existan límites de cuantía. F.J. Bonilla Ortiz, *Los límites económicos en las demandas contra el Estado*, 54 Rev. Jur. U.P.R. 761, 771 (1985). Entendemos que el Estado debe responder de igual manera que cualquier persona, ya sea natural o jurídica, por las consecuencias de sus actos.

En nuestro ordenamiento jurídico, el Tribunal Supremo federal resolvió que el Gobierno de Puerto Rico podía invocar la inmunidad del soberano a su favor. *Porto Rico v. Rosaly*, 227 U.S. 270 (1913). Por esto, en 1916 se aprobó una ley que permitía las demandas contra el Estado en pleitos de reivindicación de bienes muebles o inmuebles o derechos sobre éstos, y por daños y perjuicios basados en contratos. Ley Núm. 76 de 13 de abril de 1916, Leyes de

Puerto Rico, págs. 155–157. Esta ley no imponía ningún límite de cuantía. Para poder demandar al Estado por daños y perjuicios, se tenía que utilizar el mecanismo de leyes especiales. *Defendini Collazo et al. v. E.L.A., Cotto*, 134 D.P.R. 28 (1993). En 1928, el legislador aprobó la Ley Núm. 11 de 18 de abril, 32 L.P.R.A. secs. 3061 y 3064n., en la que se autorizó a demandar al Estado por reclamaciones de daños y perjuicios en general. Esta ley tampoco proveyó un límite a las cuantías que se podían conceder.

En 1955 se aprobó una ley de renuncia a la inmunidad soberana que autorizaba de forma general las demandas contra el Estado: la Ley Núm. 104, *supra*, conocida como la Ley de Pleitos contra el Estado Libre Asociado de Puerto Rico, que derogó la Ley Núm. 76, *supra*. Este estatuto dispuso un límite de cuantía compensable por el Estado y estableció una serie de situaciones que quedaban excluidas de esta renuncia. *Defendini Collazo et al. v. E.L.A., Cotto*, supra.

Aunque estas leyes se aprobaron a partir de 1916, antes de esta fecha el Gobierno de Puerto Rico ya había renunciado a parte de su inmunidad como soberano. Nos referimos a los Arts. 32 y 404 del Código Político, 3 L.P.R.A. secs. 183 y 422.[2] En específico, el artículo 404, *supra*, dispone que:

> El Estado Libre Asociado de Puerto Rico será responsable civilmente de los daños y perjuicios que se ocasionen a las personas o propiedades por desperfectos, falta de reparación o de protección suficientes para el viajero en cualquier vía de comunicación perteneciente al Estado Libre Asociado y a cargo del Departamento de Transportación y Obras Públicas, excepto donde se pruebe que los desperfectos de referencia fueron causados por la violencia de los elementos y que no hubo tiempo suficiente para remediarlos.

Con relación a esta disposición, en *Santiago v. Pueblo*,

---

[2] El Art. 32 del Código Político, 3 L.P.R.A. sec. 183, se añadió mediante la Ley Núm. 81 de 14 de marzo de 1912, y el Art. 404 (3 L.P.R.A. sec. 422) es ley desde que se redactó el Código Político en 1902.

74 D.P.R. 211 (1952), dijimos que la Ley Núm. 76, *supra*, por ser un estatuto de consentimiento, no había derogado la responsabilidad que aceptó el Estado por virtud del Art. 404 del Código Político, *supra. Santiago v. Pueblo*, supra, esc. 3. A pesar de que este artículo es de 1902, que siga vigente no es producto de un olvido legislativo, ya que ha sido enmendado subsiguientemente en varias ocasiones.[3] *Pérez Piñero v. E.L.A.*, 105 D.P.R. 391, 394 (1976), opinión emitida por el Juez Asociado Señor Rigau a la cual se unieron el entonces Juez Presidente Señor Trías Monge y el Juez Asociado Señor Irizarry Yunqué. Según establece el Juez Rigau en su ponencia, mediante el Art. 404 del Código Político, *supra* se intentó implantar una política pública distinta para esos casos y por eso se legisló. pág. 396.

Al confrontarnos nuevamente con la necesidad de interpretar el Art. 404, en *Publio Díaz v. E.L.A.*, 106 D.P.R. 854, 862 (1978), resolvimos que éste "[c]onstituye *el precepto especial a utilizarse* para evaluar acciones por daños que se ocasionen a personas o propiedades en las vías públicas estatales, cuando los mismos fuesen motivados por cualesquiera de estas condiciones: 1) desperfectos; 2) falta de reparación; 3) falta de protección suficientes para el viajero". (Énfasis suplido.)[4]

Notamos que, a través del desarrollo de este estatuto, el legislador nunca le ha impuesto directamente límites de

---

[3] Se enmendó mediante las leyes siguientes: la Ley Núm. 273 de 10 de mayo de 1950, la Ley Núm. 6 de 24 de julio de 1952, y el Plan de Reorganización Núm. 6 de 1971.

[4] En este caso no fue necesario entrar a determinar si aplicaban o no los límites impuestos por la Ley Núm. 104, supra, ya que la cuantía concedida luego de aplicar las normas de negligencia comparada resultó ser menor que los límites dispuestos por la ley. En específico, se determinó que las dos (2) víctimas del accidente habían sido veinticinco por ciento (25%) negligentes. En consecuencia, se redujo la compensación que recibieron los herederos por los sufrimientos y las angustias mentales de las víctimas (ya que éstas murieron en el accidente). Asimismo, se redujo la cantidad otorgada a los demandantes en concepto del lucro cesante y los daños y las angustias mentales propios. La cuantía de los daños se calculó según las normas establecidas en *Torres v. A.F.F.*, 94 D.P.R. 314 (1967), y *Quintana Martínez v. Valentín*, 99 D.P.R. 255 (1970). Debemos destacar que este último caso fue revocado en *Torres Pérez v. Medina Torres*, 113 D.P.R. 72 (1982), aunque parte de su doctrina se reinstaló en *Miranda v. E.L.A.*, 137 D.P.R. 700 (1994).

cuantía como condición a la renuncia de la inmunidad del soberano.([5]) Más aún, al aprobarse la Ley Núm. 104, *supra*, sobre la autorización de pleitos contra el Estado, el legislador dispuso expresamente que dicha ley no aplicaría a las acciones para las cuales existiera una legislación específica. Así dispuso que: "[n]ada en las secs. 3077 *et seq.* ... afectará las acciones sobre recobro o reintegro de contribuciones, expropiaciones y *todas aquéllas para las que existe legislación específica, las que seguirán rigiéndose por las leyes aplicables*". (Énfasis suplido.) Art. 4 de la Ley Núm. 104 (32 L.P.R.A. sec. 3079).

De otra parte, la Ley Núm. 104, *supra*, también incluyó en su Art. 11, una disposición derogatoria, que dispone lo siguiente:

> Queda derogada la ley número 76 de 13 de abril de 1916, según ha sido enmendada, así como toda otra ley o parte de ley que a ésta se oponga; no obstante lo anterior dicha ley quedará en vigor únicamente en cuanto a los procedimientos judiciales que ahora estén pendientes bajo sus disposiciones y hasta que queden terminados. 1955 Leyes de Puerto Rico 551, 557.

### III

En su sentencia, el Tribunal de Circuito resolvió que la Ley Núm. 104, *supra*, por ser un estatuto de carácter general y posterior al Art. 404 del Código Político, *supra*, incluía todas las reclamaciones por daños y perjuicios contra el Estado. Al llegar a esta conclusión, procedió a resolver que a tenor de la disposición derogatoria antes transcrita, los límites de cuantía le aplican a las acciones instadas contra el Estado al amparo del Art. 404 del Código Político, *supra*. No avalamos este razonamiento.

Lo que procede, pues, es armonizar los Arts. 4 y 11 de la Ley Núm. 104, *supra*, con el Art. 404 del Código Político,

---

([5]) En las enmiendas hechas por el legislador en 1950, 1952 y 1971 no se incluyó ningún límite de cuantía.

*supra*. El citado Art. 11 derogó expresamente toda ley que se opusiera a la Ley Núm. 104, *supra*. Por su parte, el Art. 4, *supra*, dispuso que la Ley Núm. 104, *supra*, no aplicaría a las acciones para las que existe una legislación en específico y que éstas se seguirían rigiendo por las leyes aplicables. El Art. 404 del Código Político, *supra*, es una legislación específica, vigente con anterioridad a la promulgación de la Ley Núm. 104, *supra*, que constituyó una renuncia sin límites a la inmunidad del soberano. Es, por lo tanto, una de las situaciones previstas por el Art. 4 de dicha ley, *supra*. En consecuencia, la Ley Núm. 104, *supra*, no le es aplicable. Después de todo, la norma es que a menos que no se especifiquen condiciones y limitaciones, la renuncia a la inmunidad soberana es incondicional; es decir, el Estado respondería por sus actos de igual forma y manera que cualquier persona.

Obviamente, la intención legislativa no fue limitar ni cambiar el tipo de renuncia a la inmunidad del soberano que ya había concedido sin imponer condición alguna en el Art. 404 del Código Político, *supra*. Este artículo es claro. Nada de lo allí dispuesto o de lo expuesto en la Ley Núm. 104, *supra*, tiende a indicar que la intención del legislador fue que se aplicaran los límites de cuantía.[6] El historial legislativo de la Ley Núm. 104, *supra*, tampoco lo refleja. Interpretar que le aplican los límites de cuantía sería forzado y en contravención de las normas interpretativas es-

---

[6] Según esta ley, el Estado autorizó a ser demandado en las situaciones siguientes:

"(a) Acciones por daños y perjuicios a la persona o a la propiedad hasta la suma de setenta y cinco mil (75,000) dólares causados por acción u omisión de cualquier funcionario, agente o empleado del Estado, o cualquier otra persona actuando en capacidad oficial y dentro del marco de su función, cargo o empleo interviniendo culpa o negligencia.

"(b) Acciones para reivindicar propiedad mueble e inmueble, o derechos sobre las mismas, con o sin resarcimiento de perjuicios por los daños causados en dicha propiedad o por sus rentas y utilidades y para deslinde de fincas rústicas.

"(c) Acciones civiles en que la cuantía reclamada no exceda de setenta y cinco mil (75,000) dólares de principal, y que se funden en la Constitución, o en cualquier ley de Puerto Rico, o en cualquier reglamento de algún departamento o división del Estado, o en algún contrato expreso o tácito con el Estado." 32 L.P.R.A. sec. 3077.

tablecidas en el Código Civil. En específico, el Art. 14 del Código Civil, 31 L.P.R.A. sec. 14, dispone que "[c]uando la ley es clara libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu". Al interpretar esta disposición, hemos establecido que el alcance del lenguaje sencillo y absoluto de un estatuto no puede ser restringido al interpretarlo como que provee algo que el legislador no intentó proveer. Si así lo hiciéramos, estaríamos invadiendo las funciones de la Asamblea Legislativa. *Caguas Bus Line v. Sierra, Comisionado*, 73 D.P.R. 743, 750 (1952). Además, véanse: *Mun. San Juan v. Banco Gub. Fomento*, 140 D.P.R. 873 (1996); *Rojas v. Méndez & Co., Inc.*, 115 D.P.R. 50, 54 (1984); *Ferretería Matos, Inc. v. P.R. Tel. Co.*, 110 D.P.R. 153, 156–157 (1980).

En consecuencia, no podemos extender la Ley Núm. 104, *supra*, limitando la compensación que los ciudadanos reciben por los daños que les cause el Estado.[7]

El Estado puede renunciar a su inmunidad condicional o incondicionalmente. Para poder determinar qué tipo de renuncia se ha hecho, hay que acudir a la letra de la ley. Si nada se dice, ésta es incondicional. Existen ciertas situaciones que utilizaremos analógicamente y a manera de ejemplo, donde el Estado ha renunciado a su inmunidad como soberano sin imponer o especificar condición alguna a su renuncia, o ha impuesto condiciones específicas aplicables a esa situación en particular.

---

[7] En nuestra investigación, no hemos encontrado caso alguno en que este Tribunal se haya pronunciado con respecto a la aplicación de los límites de cuantía (establecidos en la Ley Núm. 104, *supra*) al Art. 404 del Código Político, *supra*. En *Cárdenas Maxán v. Rodríguez Rodríguez*, 125 D.P.R. 702 (1990), esto se alegó como error, pero revocamos al foro de instancia utilizando otros argumentos. Nunca entramos a discutir este señalamiento.

# IV

En primer lugar, el Estado implanta su política pública y actúa a través de sus funcionarios, departamentos, instrumentalidades, agencias y corporaciones públicas, entre otros. A algunos de ellos, el Estado les ha conferido la facultad de demandar y ser demandados. Usualmente esta facultad de ser demandado no está condicionada. Al provenir la renuncia de inmunidad soberana de otro estatuto, a éstos no les aplica la Ley Núm. 104, *supra*.[8] El Estado, dentro de la facultad que tiene para renunciar a su inmunidad soberana, puede hacerlo *con o sin limitaciones*. La Ley Núm. 104, *supra*, constituye la ley de renuncia de inmunidad soberana general y está condicionada tanto en cuantías como en situaciones. Las demás leyes de renuncia a la inmunidad soberana pueden incluir las mismas condiciones, otras condiciones o no estar condicionadas, dependiendo de lo dispuesto por el legislador.

Por ejemplo, al crear la Autoridad de Energía Eléctrica de Puerto Rico mediante la Ley Núm. 83 de 2 de mayo de 1941, según enmendada, 22 L.P.R.A. sec. 191 *et seq.*; la Autoridad de Edificios Públicos mediante la Ley Núm. 56 de 19 de junio de 1958, según enmendada, 22 L.P.R.A. sec. 901 *et seq.*; la Autoridad de Comunicaciones de Puerto Rico mediante la Ley Núm. 212 de 12 de mayo de 1942, según enmendada, 27 L.P.R.A. sec. 291 *et seq.*; la Autoridad de Teléfonos de Puerto Rico mediante la Ley Núm. 25 de 6 de mayo de 1974, según enmendada, 27 L.P.R.A. sec. 401 *et seq.*; la Autoridad de Tierras de Puerto Rico mediante la Ley Núm. 26 de 12 de abril de 1941, según enmendada, 28 L.P.R.A. sec. 241 *et seq.*, se estableció que todas tendrían la facultad de demandar y ser demandadas, sin imponer con-

---

[8] Específicamente, el Art. 4 de la Ley Núm. 104, *supra*, dispone, en lo pertinente, que: "[l]as disposiciones de estas secciones serán también aplicables a aquellas agencias, instrumentalidades y corporaciones públicas independientes cuya facultad para demandar y ser demandadas no esté prevista por otras leyes." 32 L.P.R.A. sec. 3079.

diciones especiales ni límites de cuantía. El Estado renunció a su inmunidad del soberano de una forma general, tal y como lo hizo al redactarse el Art. 404 del Código Político, *supra*.

Por otro lado, al crear la Junta de Planificación mediante la Ley Núm. 75 de 24 de junio de 1975 (conocida como Ley Orgánica de la Junta de Planificación de Puerto Rico), según enmendada, 23 L.P.R.A. sec. 62 *et seq.*, el Estado dispuso expresamente entre sus facultades que ésta podía demandar y comparecer ante todos los tribunales de justicia de Puerto Rico, representada por sus abogados o por cualquier abogado particular que contrate. 23 L.P.R.A. sec. 62j(2). Al renunciar a su inmunidad en esta situación, según surge del lenguaje del estatuto, el Estado no impuso condición alguna.(9)

También existe la situación especial del Departamento de Recreación y Deportes. Cuando se creó, éste retuvo las funciones, los poderes, los deberes y las obligaciones de la Administración de Parques y Recreo Público. 3 L.P.R.A. sec. 442d. En *Rivera Maldonado v. E.L.A.*, 119 D.P.R. 74, 82 (1987), resolvimos que, debido a esta situación, el Departamento de Recreación y Deportes goza de personalidad jurídica restringida, lo que entraña una renuncia a la inmunidad soberana. Esta renuncia a la inmunidad del soberano se hizo sin imponer condiciones. Conforme a la letra del estatuto, la renuncia fue una general.

---

(9) En cuanto a la Junta de Calidad Ambiental, creada al amparo de la Ley Núm. 9 de 18 de junio de 1970, según enmendada, 12 L.P.R.A. sec. 1128 *et seq.*, esta ley la autorizó a entablar acciones civiles de daños y perjuicios para recobrar el valor de los daños ocasionados al ambiente o a los recursos naturales, 12 L.P.R.A. sec. 1131(29), y acudir a los tribunales estatales y federales a solicitar cualquier remedio en acciones civiles, 12 L.P.R.A. sec. 1131(30). Aquí tampoco el Estado limitó las cuantías que han de ser reclamadas y nada se dijo en cuanto a las demandas contra la Junta.

## V

En conclusión, las renuncias que hace el Estado a su inmunidad como soberano son, por lo general, incondicionales. De existir condiciones, hay que observar el lenguaje del estatuto en cuestión para determinar su alcance. Asimismo, se debe tomar en cuenta que la tendencia moderna es a limitar la inmunidad del Estado, propiciando su renuncia. En el caso del Art. 404 del Código Político, *supra*, de su claro lenguaje surge que el Estado renunció de forma general e incondicional a su inmunidad. En consecuencia, la Ley Núm. 104, *supra*, y los límites de cuantía allí establecidos no le aplican. No debemos por fíat judicial imponer límites y condiciones donde no existan.

Por las razones antes expuestas, disentimos del criterio de la mayoría de este Tribunal. Expediríamos el auto presentado y revocaríamos la sentencia emitida por el Tribunal de Circuito.