# 2003 DTA 142

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL I DE SAN JUAN
PANEL II**

COMISIONADO DE INSTITUCIONES FINANCIERAS
Recurrido

v.

HECTOR GARCIA ENCHAUTEGUI
Peticionario

Núm. KLRA-2003-00629

San Juan, Puerto Rico, a 5 de septiembre de 2003

Panel integrado por su Presidenta, la Juez Rodríguez de Oronoz,
y las Juezas Peñagarícano Soler y Bajandas Vélez

Bajandas Vélez, Jueza Ponente

## TEXTO COMPLETO DE LA RESOLUCION

El 3 de septiembre de 2003, el recurrente, Sr. Héctor García Enchautegui, presentó ante nos una Petición de Revisión y una Moción en Auxilio de Jurisdicción. En la primera, nos solicita la revocación de una *"Orden para Mostrar Causa Enmendada"* emitida y notificada el 3 de julio de 2003 ██ y, en auxilio de nuestra jurisdicción, la paralización temporera de los procedimientos ante la Oficina del Comisionado de Instituciones Financieras (Comisionado).

Por los fundamentos que a continuación exponemos, se deniegan tanto el recurso de revisión solicitado como la Moción Urgente en Auxilio de Jurisdicción.

## I

Luego de realizar una investigación, el 5 de diciembre de 2002, el Comisionado dictó una orden para mostrar causa contra el recurrente, por entender que éste, por sí y en común acuerdo con su esposa, la Sra. Herminia Roque Ríos, incurrió en varias violaciones a la Ley Núm. 214 de 14 de octubre de 1995, según enmendada, mejor conocida como *"Ley para Reglamentar el Negocio de Intermediación Financiera"* 7 L.P.R. A. sec. 1071 *et. seq.*, y al Reglamento de Intermediación Financiera, Núm. 5721 de 21 de noviembre de 1997.

Ello, por haber alegadamente realizado una serie de negocios como intermediario financiero y haber recibido comisión sin poseer la debida licencia expedida por el Comisionado. Dicha orden requirió mostrar causa por la cual no debía imponerse una pena de restitución por la cantidad de $51,902.19 más las sanciones correspondientes. Apéndice del Recurrente, págs. 29-64.

El 17 de enero de 2003, el Comisionado designó al Lcdo. Angel González Román como Oficial Examinador del caso. Como parte de sus funciones, le delegó *"amplia potestad para celebrar y presidir conferencias entre las partes y sus abogados, celebrar vistas evidenciarias y adjudicativas; recibir prueba testifical, documental, tomar juramentos, hacer determinaciones de hechos y conclusiones de derecho; y*

*formular recomendaciones al Comisionado de Instituciones Financieras*". Apéndice del Recurrente, págs. 66-67.

Luego de varios incidentes procesales, el 28 de marzo de 2003, el recurrente solicitó mediante moción la entrega de la copia del Informe de Investigación. Sin embargo, el Comisionado se opuso el 31 de marzo de 2003, por entender que dicho informe goza de carácter privilegiado. Apéndice del Recurrente, págs. 70-75. Así las cosas, el Oficial Examinador emitió Resolución y Orden el 10 de abril de 2003 declarando sin lugar la solicitud del querellado. Apéndice del Recurrente, págs. 76-77.

Ese mismo día, 10 de abril de 2003, el Comisionado presentó una enmienda a las alegaciones para incluir cierta prueba adicional contra el recurrente. Apéndice del Recurrente, págs. 84-87. Luego del recurrente presentar su oposición a dicha enmienda, el 1 de mayo de 2003, el Oficial Examinador dictó resolución y orden declarando con lugar dicha enmienda.

El 3 de julio de 2003, el Comisionado dictó la orden que motiva este recurso, la cual le solicita al recurrente mostrar causa por la cual no deba imponérsele una multa por la cantidad de $45,000.00 dólares y una pena de restitución por la cantidad de $51,902.19 dólares. Oportunamente, el día 4 de agosto de 2003, el recurrente presentó moción de reconsideración de dicha orden ante el Comisionado. Adujo, en esencia, que el Comisionado no está facultado para emitir órdenes para mostrar causa, por lo que se excedió en sus facultades al expedirla. Apéndice del Recurrente, págs. 100-107.

El 11 de agosto de 2003, el Comisionado emitió Resolución Parcial. En la misma, refirió la reconsideración al Oficial Examinador a los fines de que *"la atienda y la tome en consideración al emitir sus recomendaciones en el Informe del Oficial Examinador, una vez culminados los procedimientos."* Apéndice del Recurrente, pág. 108. Surge de los autos que dicha resolución fue notificada el mismo día. Apéndice del Recurrente, pág. 109.

Inconforme, el recurrente acudió ante nos el 3 de septiembre de 2003. Aduce la comisión de los siguientes errores:

*"ERRO EL HONORABLE COMISIONADO DE INSTUCIONES FINANCIERAS AL TOMAR BAJO SU CONSIDERACION LA MOCION DE RECONSIDERACION, OPORTUNAMENTE PRESENTADA POR EL RECURRENTE, MEDIANTE EL MECANISMO DE REFERIRLA AL OFICIAL EXAMINADOR PARA SU RECOMENDACION UNA VEZ FINALICE EL PROCESO.*

*ERRO EL HONORABLE COMISIONADO DE INSTITUCIONES FINANCIERAS AL DETERMINAR QUE EL PETICIONARIO INCURRIO EN CONDUCTA CONSTITUTIVA DE INTERMEDIACION FINANCIERA.*

*ERRO EL HONORABLE COMISIONADO DE INSTITUCIONES FINANCIERAS AL DICTAR UNA ORDEN DE NATURALEZA SUMARIA EN AUSENCIA DE PELIGRO INMINENTE A LA SEGURIDAD DE LA INDUSTRIA, LA CIUDADANIA O EL ORDEN PUBLICO.*

*ERRO EL HONORABLE COMISIONADO DE INSTITUCIONES FINANCIERAS AL BASAR SU ORDEN PARA MOSTRAR CAUSA EN UNA LEY INCONSTITUCIONALMENTE IMPRECISA."*

En el primer error, el recurrente, como cuestión de umbral, plantea un asunto de carácter estrictamente jurisdiccional, a saber: si la reconsideración del recurrente, al ser referida al Oficial Examinador mediante Resolución Parcial de 11 de agosto de 2003, en efecto debe entenderse como una actuación demostrativa de que la moción se *"acogió"* conforme a derecho. Finalmente, el recurrente plantea que la Resolución Parcial de 11 de agosto de 2003 suscrita por el Comisionado tuvo el efecto de denegar de plano la referida moción, por lo que el término para revisar judicialmente la orden para mostrar causa ha sido cumplido.

## II

Como se sabe, una apelación o recurso prematuro, igual que uno tardío, adolece del defecto de privar de jurisdicción al tribunal al cual se recurre. Su presentación carece de eficacia, por lo que no produce efecto jurídico alguno. Ello es así, puesto que en el momento en que fue presentado no había autoridad judicial alguna para acogerlo. *Julia Padró, etc. v. Epifanio Vidal, S.E.,* **2001 J.T.S. 18**, Opinión de 14 de febrero de 2001; y *Rodríguez Díaz v. Zegarra,* **2000 J.T.S. 64**, Opinión *Per Curiam* de 27 de marzo de 2000.

Del mismo modo, es norma reiterada que le corresponde a los tribunales ser los guardianes de su jurisdicción, independientemente de que la cuestión haya sido planteada anteriormente o no. *Vázquez v. A.R.P. E.,* 128 D.P.R. 513 (1991); *Gobernador de Puerto Rico v. Alcalde de Juncos,* 121 D.P.R. 522 (1988); *López Rivera v. A.F.F.,* 89 D.P.R. 414 (1963), según citados en *Ponce Federal Bank, F.S.B. v. Chubb Life Insurance Company of America,* **2001 J.T.S. 145**, 155 D.P.R. \_\_\_\_ (2001); y *Medio Mundo, Inc. v. Amparo Rivera,* **2001 J.T.S. 88**; 154 D.P.R. \_\_\_\_ (2001). Con ello en perspectiva, pasemos a dilucidar nuestra jurisdicción en los recursos de revisión administrativa.

La Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, según enmendada (en adelante, LPAU), define el ámbito de la revisión judicial. Por disposición expresa de la Sec. 4.2 solamente órdenes o resoluciones finales dictadas por las agencias o funcionarios administrativos pueden ser revisadas judicialmente. Dicha sección señala lo siguiente:

*"Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente, podrá presentar una solicitud de revisión ante el Tribunal de Circuito de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico ...*

*Una orden o resolución interlocutoria de una agencia, incluyendo aquéllas que se emitan en procesos que se desarrollan por etapas, no serán revisables directamente".* (Enfasis nuestro). 3 L.P.R.A. Sec. 2172.

Como puede observarse, dicha disposición requiere que la parte haya agotado todos los remedios provistos por la agencia o por el organismo administrativo correspondiente y que la base para la revisión judicial ulterior sea la orden o resolución final de la agencia. La ley no contempla, pues, la revisión judicial de las órdenes o dictámenes interlocutorios que emita una agencia durante un procedimiento adjudicativo ante ella.

La L.P.A.U. no define específicamente el término "*orden o resolución final*", aunque describe "*orden o resolución*" como "*... cualquier decisión o acción agencial de aplicación particular que adjudique derechos u obligaciones de una o más personas específicas, o que imponga penalidades o sanciones administrativas excluyendo órdenes ejecutivas emitidas por el Gobernador*", Artículo 1(f) de la L.P.A.U., 3 L.P.R.A. sec. 2102 (f). A su vez, la L.P.A.U. considera una orden "*interlocutoria*" como "*... aquella acción de la agencia en un procedimiento adjudicativo que disponga de algún asunto meramente procesal.*" Artículo 1(h) de la ley, 3 L.P. R.A. sec. 2102(h).

Cuando la ley es clara, como lo es aquí, su letra debe observarse rigurosamente. Art. 14 del Código Civil de Puerto Rico, 31 L.P.R.A. Sec. 14; *Alemán Martínez v. E.L.A.,* Voto particular disidente de la Hon. Miriam Naveira de Rodón, Jueza Asociada del Tribunal Supremo, 145 D.P.R. 452 (1998); *Cotto Guadalupe v. Departamento de Educación,* 138 D.P.R. 658 (1995); *Román v. Superintendente,* 93 D.P.R. 685 (1966); *Caguas Bus Line v. Sierra,* 73 D.P.R. 743 (1952).

Las disposiciones de la L.P.A.U. arriba citadas forman parte de un conjunto de normas dirigidas a que la

resolución u orden de la cual se recurra a los tribunales ya haya adjudicado finalmente las controversias suscitadas y exprese claramente las razones para el curso decisorio. Así pues, la Sec. 3.14 de la LPAU exige de las órdenes o resoluciones finales de las agencias incluyan o expongan separadamente determinaciones de hechos y conclusiones de derecho que fundamenten la adjudicación, ya que ello es necesario para la función revisora de los tribunales.

El propio alcance de la revisión judicial se define en la Sec. 4.5 de la ley cuando indica que *"las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo"* y que las *"conclusiones de derecho serán revisables en todos sus aspectos por el tribunal"*.

Al limitar la revisión judicial a las órdenes o resoluciones finales de los organismos administrativos, el legislador se aseguró de que los procesos judiciales se efectuaran luego de que finalizaran los trámites administrativos y se hubieran decidido y adjudicado todas las controversias, emitiéndose la correspondiente resolución con las determinaciones de hechos y conclusiones de derecho pertinentes. Véase el Informe Conjunto de las Comisiones de Gobierno Estatal, Asuntos Municipales y de lo Jurídico del Senado de 10 de abril de 1988 sobre el P. del S. 350, en particular la Ponencia de la Profesora Celina Romany.

Por su parte, el Profesor Demetrio Fernández avala la exigencia de que la revisión judicial se interponga sólo luego de la resolución u orden final de la agencia. Señala lo siguiente:

*"Una vez el organismo administrativo ha rendido su decisión en el caso y la 'parte adversamente afectada' ha agotado todos los remedios administrativos disponibles dentro del organismo, se puede presentar la solicitud de la revisión judicial. ... Para interponer el recurso, la decisión administrativa tiene que ser 'final' y además debe ser revisable.*

***La decisión administrativa es final cuando ha decidido todas las controversias y no deja pendiente ninguna para ser decidida en el futuro.****"* (Énfasis nuestro).

Por otro lado, la doctrina de agotamiento de remedios administrativos sirve de apoyo a la norma de finalidad de las órdenes o resoluciones administrativas. Dicha doctrina permite que los tribunales discrecionalmente se abstengan de revisar la determinación de una agencia administrativa hasta tanto la misma haya tenido la oportunidad de considerar todos los aspectos en controversia y su decisión refleje la posición final de la persona o junta que dirija la entidad administrativa. La doctrina, dicho de otra forma, requiere que los casos que se inician en el foro administrativo lleguen a su fin en la agencia antes de que el foro judicial intervenga. De no ser así, este último deberá abstenerse de entender en el caso hasta que concluyan los trámites administrativos. *Aurora Acevedo Ramos v. Municipio de Aguadilla*, **2001 J.T.S. 54**, pág. 1110, 153 D.P.R.____ (2001).

### III

Un análisis detenido de los autos ante nos demuestra que el dictamen recurrido se reduce a exponer meramente lo siguiente: las alegaciones de la querella instada por el Comisionado contra el recurrente, consistentes en 14 cargos en contravención con la Ley Núm. 214 y el Reglamento de Intermediación Financiera, Núm. 5721; una orden de producción de documentos y, a su vez, una orden de mostración de causa por la cual el Comisionado no deba: (1) ordenar un *"cese y desista"* de forma inmediata contra el recurrente; (2) imponerle la multa correspondiente; e (3) imponerle una pena de restitución. Asimismo, el Comisionado ordenó al recurrente tomar todas las medidas de seguridad necesarias para preservar los documentos que deberá producir. Finalmente, dicha orden incluyó los apercibimientos correspondientes, entre ellos, el derecho del recurrido a solicitar una vista dentro del término de quince días, solicitar la reconsideración de la orden y los términos para la revisión judicial.

No vemos cómo dicha mostración de causa, en este momento y de por sí, constituya una decisión revisable ante este foro. Resulta evidente que las anteriores determinaciones tomadas por el Comisionado disponen únicamente del curso procesal a seguirse en el ámbito administrativo. De ninguna manera las mismas adjudican derechos u obligaciones entre las partes, lo que activaría nuestra función revisora. Adviértase que de acceder a la petición del recurrente, este foro estaría resolviendo en primera instancia, lo que por disposición de ley le corresponde al Comisionado.

De lo anterior se deduce que es menester único del Oficial Examinador dilucidar y adjudicar los hechos alegados, a fin de realizar las recomendaciones correspondientes para la disposición del caso. Todo ello nos lleva a concluir que en estos momentos el único foro apropiado con jurisdicción para ventilar los planteamientos del recurrente es el administrativo en la persona del Oficial Examinador, cuyas recomendaciones posteriormente han de ser examinadas, en última instancia, por el Comisionado. De lo contrario, este foro estaría en la posición de revisar materias que aún no han sido adjudicadas en la agencia propiamente.

De conformidad con lo anterior, entendemos que este Tribunal carece de jurisdicción para atender una determinación de carácter interlocutorio como lo es el dictamen recurrido. Como se sabe, la falta de jurisdicción no puede ser subsanada ni el tribunal puede arrogársela cuando no la tiene. *Aponte Correa v. Policía de P.R.,* 141 D.P.R. 75, 84 (1996); *Vázquez v. A.R.P.E.,* 128 D.P.R. 513, 537 (1991); *Gobernador de P.R. v. Alcalde de Juncos,* 121 D.P.R. 522, 530 (1988). Este Tribunal carece de discreción para asumir jurisdicción donde no la hay. *Martínez v. Junta de Planificación,* 109 D.P.R. 839, 842 (1980); *Maldonado v. Pichardo,* 104 D.P.R. 778, 782 (1976).

Por los fundamentos antes expuestos, se desestima el recurso de revisión judicial del epígrafe por falta de jurisdicción y se declara no ha lugar a la Moción en Auxilio de Jurisdicción.

Notifíquese de inmediato por la vía ordinaria.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIO 2003 DTA 142**

**1.** En su escrito, el recurrente aduce que la orden recurrida se notificó a la mano el 14 de julio de 2003.