

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José Guillermo González Hernández | Certiorari |
| Recurrido | |
| v. | 2011 TSPR 65 |
| Enrique González Hernández | 181 DPR _____ |
| Peticionario | |

Número del Caso:   CC         - 2009 - 1001

Fecha: 27 de abril de 2011

Tribunal de Apelaciones:

Región Judicial de San Juan Panel I

Juez Ponente:

Hon. Erik Ramírez Nazario

Abogada de la Parte Peticionaria:

Lcda. Nuyen Marrero Bonilla

Abogado de la Parte Recurrida:

Lcdo. Daniel Muñoz Fernós

Materia:      Petición de Incapacidad y Nombramiento de Tutor

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Guillermo González Hernández

    Recurrido

        v.

Enrique González Hernández

    Peticionario

*Certiorari*

CC-2009-1001

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 27 de abril de 2011.

El peticionario, Enrique González Hernández, nos solicita la revisión de una Sentencia emitida por el Tribunal de Apelaciones. Mediante dicho dictamen el foro apelativo intermedio denegó expedir el auto de *certiorari* solicitado para revisar una Resolución del Tribunal de Primera Instancia en la cual el foro primario declaró que el peticionario era incapaz para administrar sus bienes y le designó un tutor.

El presente recurso nos brinda, *inter alia*, la oportunidad de determinar si una persona puede ser declarada incapaz para administrar sus bienes si ésta no tiene las destrezas o el conocimiento para

manejar asuntos económicos complejos. *A priori*, contestamos en la negativa.

Veamos los hechos que dieron génesis a la controversia de autos.

## I

El 26 de febrero de 2008, el Sr. José Guillermo González, en adelante, el recurrido, presentó una Demanda de Declaración de Incapacidad y Nombramiento de Tutor ante el Tribunal de Primera Instancia contra su hermano, el peticionario, en la que indicó que este último tenía afectada su salud mental y que no estaba capacitado para administrar sus bienes y su persona.

En su solicitud, el recurrido señaló que existía una comunidad hereditaria entre éste, el peticionario y el padre de ambos, el Sr. William González Quiñones, sobre los bienes de la difunta madre del recurrido y del peticionario cuyo valor alegadamente ascendía a varios millones de dólares. Sostuvo que los bienes que presuntamente le correspondían al peticionario de la comunidad hereditaria corrían un serio peligro de pérdidas ya que se encontraban bajo el control del Sr. William González Quiñones el cual alegadamente los utilizaba para su propio beneficio.

El recurrido adujo que, luego del señor González Quiñones, era el familiar más cercano del peticionario y que por razón de su preparación, profesión y solvencia económica estaba capacitado para administrar los bienes de su hermano.

A tenor con lo expuesto, solicitó que se declarara al peticionario incapaz para administrar sus bienes y su persona, y que se nombrara al recurrido como su tutor.

Luego de varios incidentes procesales, el peticionario presentó una *Moción de Desestimación y/o Exposición Más Definida*. Sostuvo que el recurrido no hizo referencia a ningún hecho en su solicitud que demostrara que el peticionario se encontraba afectado de su salud y que estaba incapacitado para administrar sus bienes y su persona. Adujo que la mera alegación de que una persona está incapacitada no es suficiente para iniciar un procedimiento de declaración de incapacidad y que el recurrido tenía que alegar hechos que justificaran el remedio que solicitaba.

Por otro lado, señaló que "[e]l hecho de que sea heredero de una gran fortuna y que por su complejidad… necesite y busque la ayuda de expertos para manejarla y/o administrarla, no quiere decir que él está incapacitado para cuidar de su persona y administrar sus bienes al punto que necesite que se le nombre judicialmente un tutor".[1]

Por tal razón, peticionó que se desestimara la solicitud de incapacidad o que se ordenara al recurrido que la enmendara de forma que adujera hechos que sostuvieran su alegación de que el peticionario era incapaz.

Junto con su Moción, el peticionario incluyó un Informe Psiquiátrico del Dr. Neftalí Olmo Terrón. Dicho

---

[1] Apéndice de la Petición de *Certiorari*, pág. 73.

médico indicó que el peticionario sufrió una crisis emocional mientras estudiaba en Estados Unidos para la cual comenzó tratamiento psiquiátrico con el Dr. Rafael Padró Yumet en el 1976 y luego con el doctor Olmo Terrón a partir de diciembre de 2001.

El galeno señaló que el peticionario nunca había tenido que ser hospitalizado por su condición psiquiátrica, asistía a terapia semanalmente, tomaba diariamente los medicamentos antipsicóticos que le fueron recetados para su condición y participaba activamente en su psicoterapia. Además, expresó que el peticionario no presentaba trastornos perceptuales ni del pensamiento, no tenía dificultad alguna en el manejo de sus fondos, y funcionaba con un nivel de autonomía normal.

Por su parte, el Sr. William González Quiñones, quien también fue emplazado, presentó su Contestación a la solicitud de declaración de incapacidad. Indicó que el peticionario no era incapaz; no obstante, señaló que, en el caso de que el tribunal determinara que lo era, el Sr. William González debía ser la persona nombrada como su tutor según lo establecido en las disposiciones legales que regulan la tutela.

Así las cosas, el 15 de abril de 2008 el Tribunal de Primera Instancia designó al Dr. Víctor J. Lladó Díaz como perito del Tribunal para que realizara una evaluación del peticionario y presentara el Informe correspondiente.

Mientras tanto, el 23 de junio de 2008, el foro primario emitió una Resolución en la que denegó tanto la *Moción de Desestimación y/o Exposición Más Definida* incoada por el peticionario así como el planteamiento del Sr. William González Quiñones de que el recurrido no podía ser nombrado tutor del peticionario.

Sobre este último aspecto, el Tribunal de Primera Instancia expresó que el padre no era el único que podía ejercer la mencionada tutela ya que podían concurrir al llamado dos (2) o más personas y que el tribunal podía escoger de entre ellas a base de los mejores intereses y bienestar del tutelado. A su vez, el foro primario añadió que el recurrido también podía solicitar la declaración de incapacidad del peticionario bajo el fundamento de que los hermanos de los presuntos incapaces están autorizados a incoar este tipo de acción.

Posteriormente, el Dr. Lladó Díaz presentó su Informe ante el Tribunal de Primera Instancia. Indicó que el peticionario padecía de una enfermedad psiquiátrica severa, probablemente esquizofrenia paranoica; pero que los síntomas de dicho trastorno psicótico se encontraban encapsulados.

Apuntó que el peticionario tenía la capacidad suficiente para administrar su persona y para manejar fondos para suplir sus necesidades personales cotidianas. No obstante, entendió que tendría dificultad, y en ocasiones podría no tener la capacidad analítica

suficiente, para manejar aspectos financieros y corporativos de carácter más complejo como sería el desempeñar las funciones de un tesorero o secretario de una corporación.

Además, sostuvo que por su condición psiquiátrica, el peticionario tenía

> cierta vulnerabilidad psíquica global, que emocionalmente le debilita y le haría estar a riesgo de persuasiones o influencias por terceros, que pueden inducirle por ejemplo a tratar de complacer a estas personas y/o asumir actitudes antagónicas… sobre todo si se trata de terceros que son familiarmente ligados a él, como su padre y su hermano José Guillermo.[2]

El Dr. Lladó Díaz concluyó que, para que el peticionario pueda desempeñar

> funciones ejecutivas y/o corporativas de mayor impacto financiero y mas[sic] complicadas, como por ejemplo, recibir u otorgar préstamos, el hacer compraventas de cuotas de leche, equipo costoso o bienes raíces, se requeriría la asistencia ya de otra persona que fungiera como fiduciario, administrador o coordinador…[3]

Por su parte, el Dr. Neftalí Olmo Terrón presentó un *Informe Especial Suplementario*. Por un lado, sostuvo que la condición psicótica del peticionario no se encontraba a un nivel que le impidiera desempeñarse de forma independiente. Señaló que el peticionario tenía capacidad para discernir entre el bien y el mal, y para saber el valor del dinero; incluyendo cantidades cuantiosas. En particular, indicó que el peticionario manejaba de memoria ciertos factores económicos involucrados en la operación de la corporación

---

[2] Apéndice de la Petición de *Certiorari*, págs. 166-167.

[3] *Íd.*, pág. 167.

familiar para la que trabajaba, tales como, el efecto de las fluctuaciones de leche por vaca en la producción total de la vaquería, la eficiencia de la finca tomando en consideración la capacidad relativa para producir alimento, el costo de la maquinaria nueva, *inter alia*.

A su vez, el Dr. Olmo Terrón expresó que el peticionario controlaba y regulaba sus impulsos, manejaba sus gastos de forma juiciosa, sabía diferenciar los estímulos internos sin confundirlos con la realidad externa, y se expresaba adecuadamente y sin dificultad.

Por otra parte, el galeno señaló que el peticionario estaba limitado en cuanto a que éste no tenía las destrezas para negociar un préstamo millonario con un banco, negociar la compra de cien (100) vacas productoras de leche en Estados Unidos o para competir por un puesto de tesorero en una corporación pública. Sin embargo, indicó que el peticionario podía llevar a cabo sin problema alguno las labores que realizaba en su trabajo y por las cuales se le pagaba un sueldo fijo.

Luego de varios trámites procesales, el Tribunal de Primera Instancia celebró la vista en su fondo. En ella testificó el peticionario, el recurrido y la Sra. Ramona Rosario Méndez, la cual vive y realiza tareas domésticas en el hogar del peticionario. A su vez, se recibió el testimonio del Dr. Victor J. Lladó Díaz y del Dr. Neftalí Olmo Terrón los cuales tuvieron oportunidad de discutir sus respectivos Informes.

Evaluada la prueba presentada, el 6 de mayo de 2009 el Tribunal de Primera Instancia emitió una Resolución en la cual declaró al peticionario incapaz para administrar sus bienes excepto en el manejo de los gastos personales que costeaba con su salario semanal de doscientos cuarenta dólares ($240.00). A su vez, el foro primario determinó que el peticionario estaba incapacitado de prestar consentimiento para contratar, transigir pleitos, servir como oficial de alguna corporación, representarse en acciones judiciales y llevar a cabo cualquier otro acto para administrar sus bienes sin la asistencia de un tutor.

Por otro lado, el Tribunal declaró inhábiles para ejercer la mencionada tutela tanto al Sr. William González Quiñones como al recurrido por haber un pleito entre ellos sobre la propiedad de los bienes del peticionario. Ante esta situación, el foro primario designó al Lcdo. Carlos Fraticelli Oliver como tutor del peticionario.

Inconforme con tal decisión, el peticionario acudió ante el Tribunal de Apelaciones. Alegó como errores: (i) que el recurrido no podía incoar la Solicitud de declaración de incapacidad ya que supuestamente éste era inhábil para ser su tutor, y (ii) que no se presentó prueba suficiente para que se determinara que era incapaz.

Luego de analizar las alegaciones del peticionario, el foro apelativo intermedio concluyó que el recurrido tenía legitimación activa para solicitar la declaración de

incapacidad de su hermano. Sobre el particular, el tribunal

*a quo* hizo la siguiente determinación:

> Las personas impedidas para ejercer la tutela no
> necesariamente lo están para solicitar la
> declaración de incapacidad. En el caso ante
> nuestra consideración, quien solicitó la
> declaración de incapacidad es el único hermano
> del declarado incapaz quien tiene derecho a
> sucederle. Es decir, se cumple el requisito
> establecido en el artículo 181 del Código Civil,
> *supra*.[4] Por lo tanto, el señor José Guillermo
> González tenía la legitimación para solicitar al
> TPI la declaración de incapacidad de su hermano,
> independientemente de que estuviera o no,
> impedido de ejercer la tutela.

Por otra parte, en cuanto a la suficiencia de la

prueba para determinar la incapacidad del peticionario el

tribunal *a quo* concluyó que la decisión del Tribunal de

Primera Instancia era correcta y que dicho foro no había

abusado de su discreción al emitir su dictamen. A tales

efectos, el foro apelativo intermedio señaló lo siguiente:

> Entendemos que el TPI tuvo ante si todos los
> elementos requeridos para hacer un análisis
> adecuado del caso ante su consideración. Para
> ello, el TPI utilizó tanto informes periciales
> como el testimonio de médicos psiquiatras que
> evaluaron al señor Enrique González. El perito
> nombrado por el TPI fue un ente neutral que,
> para llegar a sus conclusiones y
> recomendaciones, utilizó información provista
> por el doctor Olmo Terrón, médico del señor
> Enrique González, y de las personas relacionadas
> con el señor Enrique González, que conocen la
> manera en que éste se desenvuelve en su diario
> vivir. El TPI utilizó además el informe
> psiquiátrico preparado por el Dr. Neftalí Olmo
> quien es el médico que ha tratado al señor
> Enrique González durante los últimos siete años.
> Tomando en consideración los testimonios
> recibidos, así como los informes periciales
> sometidos, decidió declarar incapaz al señor

---

[4] El Art. 181 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 704, indica las personas que están autorizadas para presentar una solicitud de declaración de incapacidad. Véase, Sec. II-A de la Opinión, *infra*.

Enrique González para la administración de sus bienes y nombrarle un tutor. El TPI consideró la prueba requerida por el Código Civil, supra, para adjudicar este tipo de petición, por lo cual, no podemos entender que la misma haya sido insuficiente, como nos propone el peticionario.

A tenor con lo expresado, el Tribunal de Apelaciones denegó expedir el auto de *certiorari* solicitado.

Inconforme, el peticionario presenta el recurso de autos planteando como errores:

> **Err[ó] el [Tribunal de Apelaciones] al sostener la resolución dictada por el [Tribunal de Primera Instancia] permitiendo la solicitud de incapacidad de Don Enrique González Hernández en total ausencia de prueba, así como una persona completamente inhabilitada, según indica el Código Civil, para presentar la solicitud de incapacidad.**

> **Err[ó] el [Tribunal de Apelaciones] al sostener la resolución dictada por el [Tribunal de Primera Instancia] declarando incapaz Don Enrique González Hernández, aun cuando no se presentara prueba suficiente en derecho para sustentar la alegada incapacidad.**

Vista la petición de *certiorari*, concedimos al recurrido un término para mostrar causa por la cual no debíamos expedir el mismo. Contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II

En su primer señalamiento de error, el peticionario aduce que el recurrido no tenía legitimación activa para incoar la solicitud de declaración de incapacidad debido a diversos conflictos y pleitos que existían entre ambos. Arguye que debido a ello, el recurrido estaba descalificado para ser nombrado como su tutor y que esto a su vez lo

inhabilitaba para presentar la solicitud de declaración de incapacidad en contra del peticionario.

**A**

Como norma general, en nuestro sistema de derecho existe una presunción de sanidad o capacidad mental. *Rivera y otros v. Bco. Popular*, 152 D.P.R. 140, 157 (2000). Sin embargo, dicha capacidad puede verse restringida debido a varias condiciones, tales como, la minoría de edad, la demencia, la prodigalidad, entre otras. Art. 25 del Código Civil de Puerto Rico, 31 L.P.R.A. 82. Véase, además, *Rivera y otros v. Bco. Popular*, *supra*, pág. 157. Estas circunstancias obligan a que se retrase o se suspenda, ya sea por tiempo fijo o indefinido, la aptitud para realizar actos jurídicos; teniendo que remediarse entre tanto el defecto de capacidad mediante instituciones o medios supletorios y complementarios. J. Castán Tobeñas, *Derecho Civil Español Común y Foral*, 11ma ed. rev., Madrid, Ed. Reus, 1974, T. III, pag. 447. Uno de los medios supletorios para subsanar la falta de capacidad mental es la tutela. *Rivera y otros v. Bco. Popular*, *supra*, pág. 157 esc. 11.

La tutela es aquella institución jurídica que tiene por objeto la protección y cuidado de la persona y/o los bienes de aquellos que por razón de su incapacidad están impedidos de gobernarse a sí mismos. Art. 167 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 661.

Esta figura es una institución de defensa, amparo o protección similar a la patria potestad. *Fernández Sánchez*

*v. Fernández Rodríguez*, 142 D.P.R. 275, 280 (1997). No obstante, a pesar de que la tutela y la patria potestad comparten características similares, ambas se diferencian "principalmente en el diverso fondo que les da la vida, pues en la patria potestad sólo hay una relación normal de padre e hijo, en la tutela hay una relación anormal de tutor a incapacitado, en la que faltan las bases de cariño de la primera". *Íd.* citando a F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra. ed. rev., Madrid, Ed. Pirámide, 1976, T. V, pág. 518.

Debido a la condición de extraño y la falta de vínculo familiar que puede existir entre el tutor y el pupilo, las normas que regulan la tutela son mucho más estrictas que las que reglamentan la patria potestad ya que se exige que se fije un control mayor y unos límites más rigurosos a la autoridad tutelar. *Íd.*

Existen varias personas que pueden estar sometidas a una tutela. El Código Civil de Puerto Rico incluye entre ellas a los locos o dementes aunque tengan intervalos lúcidos. Art. 168 (2) del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 662 (2). Aunque dicho estatuto hace referencia específicamente a la locura y a la demencia, se ha interpretado que dentro de tal grupo están comprendidas aquellas personas que puedan padecer de cualquier enfermedad, anomalía o deficiencia mental. Véanse, L. Diez-Picazo y otros, *Sistema de Derecho Civil*, 4ta. ed., Madrid, Ed. Tecnos, 1982, Vol. I, pág. 293; J.M. Manresa y Navarro,

*Comentarios al Código Civil Español*, Madrid, Ed. Reus, 1957, T. IV, pág. 153; J. Santos Briz, *Derecho Civil: Teoría y Práctica*, Madrid, Ed. Revista de Derecho Privado, 1982, T. V, pág. 478. Sin embargo, es importante destacar que aun cuando una persona padezca de alguna enfermedad o debilidad mental, ello no implica que ella necesariamente estará sujeta a tutela. Conforme al Art. 180 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 703, no se les puede nombrar tutor a menos que ello vaya precedido de una acción de declaración de incapacidad en la cual el tribunal concluya que el individuo no tiene capacidad para administrar sus bienes.

La declaración de incapacidad puede ser solicitada por el cónyuge o por los familiares del presunto incapaz que tengan derecho a sucederle *ab intestato*. Art. 181 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 704. A su vez, el Ministerio Público deberá pedirla: (i) cuando se trate de dementes furiosos; (ii) cuando no exista cónyuge o los parientes antes mencionados, o cuando éstos no hicieren uso de la facultad que se les concede; o (iii) cuando el cónyuge o los herederos del presunto incapaz sean menores de edad, o no tengan la personalidad necesaria para comparecer en juicio. Art. 182 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 705.

A través de la acción de declaración de incapacidad, el tribunal escuchará el dictamen de uno o varios facultativos y recibirá todas aquellas pruebas que sean

necesarias para decidir sobre la capacidad de la persona en la cual recae la solicitud. Art. 183 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 706. Si luego de evaluada tal prueba el tribunal entiende que la persona está realmente incapacitada para cuidar de sí misma y administrar sus bienes, entonces procederá al nombramiento de un tutor. *Hernández v. Hernández*, 43 D.P.R. 723, 724 (1932).

El Art. 186 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 709, dispone las personas a quienes les podrá corresponder tal tutela, a saber, al cónyuge o a cualquiera de los padres, hijos, abuelos o hermanos del declarado incapaz. Empero, en el caso de que concurran al llamado dos (2) o más de las personas indicadas, el tribunal seleccionará el tutor de entre ellas tomando en consideración los mejores intereses y bienestar del pupilo. 31 L.P.R.A. sec. 709.

Aunque las personas mencionadas en el párrafo anterior pudieran ser nombradas como tutores de una persona que haya sido declarada incapaz, existen diversas circunstancias que impedirían que cualquiera de ellos pudiera ejercer la tutela. Según el Art. 195 del Código Civil, 31 L.P.R.A. sec. 741, no podrán ser tutores:

**(1)** Los que están sujetos a tutela.

**(2)** Los que hubiesen sido convictos de cualquier delito grave o menos grave que implique depravación moral.

**(3)** Los sentenciados con una pena de privación de libertad, mientras no extingan la sentencia.

**(4)** Los que hubiesen sido removidos legalmente de otra tutela anterior por falta de cumplimiento de sus obligaciones o privados de la patria potestad.

**(5)** Las personas de mala conducta o que no tuvieren manera de vivir conocida.

**(6)** Los quebrados o concursados no habilitados.

**(7)** Los que al deferirse la tutela, tengan pleito pendiente con el menor o anteriormente lo hubiesen tenido sobre el estado civil de éste.

**(8)** Los que litiguen o hayan litigado con el menor sobre la propiedad de sus bienes, a menos que el padre o en su caso la madre, sabiéndolo, los hubiesen nombrado, sin embargo, tutor en su testamento.

**(9)** Los que adeuden al menor sumas de consideración, a menos que con conocimiento de la deuda, hayan sido nombrados en testamento por el padre o en su caso por la madre.

**(10)** El tutor testamentario que no cumpla con los requisitos indispensables para empezar el ejercicio de su cargo.

**(11)** Los que no residan en Puerto Rico.

**(12)** Los que hubieren sostenido maliciosa e injustificadamente alguna querella contra el menor o acusación criminal contra sus ascendientes o colaterales hasta el cuarto grado.

Hasta el momento hemos discutido lo que consiste la acción de declaración de incapacidad y las personas que pueden solicitarla. De igual forma también hemos señalado quienes podrán ser nombrados tutores de aquel que sea declarado incapaz para administrar sus bienes y cuáles personas estarán impedidas de ejercer la mencionada tutela. En el caso ante nuestra consideración, el peticionario aduce que aquellas personas que no puedan ser nombrados tutores de un incapaz a su vez están impedidas de incoar la

acción de declaración de incapacidad. Por lo tanto, surge la interrogante en cuanto a si las causas que establece el Art. 195 del Código Civil, *supra*, que impiden que una persona sea nombrada tutor de otra a su vez son circunstancias que prohíben que una persona pueda solicitar la declaración de incapacidad. Para efectuar el análisis de tal precepto debemos acudir a las reglas de interpretación de las leyes.

**B**

En nuestro ordenamiento jurídico hemos establecido que al momento de que los tribunales ejerzan su función de interpretar una ley, deben tomar en consideración los propósitos perseguidos por la Asamblea Legislativa al aprobarla. *Soc. Asist. Leg. v. Ciencias Forenses*, res. el 16 de septiembre de 2010, 179 D.P.R.___ (2010), 2010 T.S.P.R. 196, 2010 J.T.S. 205. Véanse, además, *Claro TV y Junta Regl. Tel. v. One Link*, res. el 9 de junio de 2010, 179 D.P.R.___ (2010), 2010 T.S.P.R. 89; 2010 J.T.S. 98; *Irizarry v. J & J Cons. Prods. Co., Inc.*, 150 D.P.R. 155, 163 (2000) citando a *Dorante v. Wrangler of P.R.*, 145 D.P.R. 408, 417 (1998).

Para realizar este ejercicio de interpretación, en primer lugar, se debe acudir al texto de la ley. *Soc. Asist. Leg. v. Ciencias Forenses*, *supra*; *Claro TV y Junta Regl. Tel. v. One Link*, *supra*. Si el lenguaje de la ley es claro y libre de toda ambigüedad, "la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu".

Art. 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14. Así pues, si el lenguaje de la ley no crea dudas y es claro en cuanto a su propósito, su propio texto es la mejor expresión de la intención legislativa. *Rullán Rivera v. A.E.E.*, res. el 30 de junio de 2010, 179 D.P.R.___ (2010), 2010 T.S.P.R. 109; *Claro TV y Junta Regl. Tel. v. One Link*, supra; *López Nieves v. Méndez Torres*, res. el 27 de abril de 2010, 178 D.P.R.___ (2010), 2010 T.S.P.R. 64, 2010 J.T.S. 73; *Garriga Villanueva v. Mun. de San Juan*, res. el 17 de junio de 2009, 176 D.P.R.___ (2009), 2009 T.S.P.R. 103, 2009 J.T.S. 106; *Ortiz v. Municipio San Juan*, 167 D.P.R. 609, 617 (2006). En tal caso, no se debe buscar más allá de la letra del estatuto para encontrar cuál fue la voluntad del legislador, sino que se debe descubrir y dar efecto a la intención expresada en su texto. *Romero Barceló v. E.L.A.*, 169 D.P.R. 460, 477 (2006).

En consecuencia, cuando el lenguaje de una ley es claro y la intención legislativa es patente, este Tribunal tiene la obligación de respetar la voluntad del legislador. *Pueblo v. González*, 165 D.P.R. 675, 707 esc. 26 (2005). Los tribunales no pueden, bajo el pretexto de buscar la intención legislativa en un estatuto, añadirle limitaciones o restricciones que no surjan de su texto. Véase, *Román v. Superintendente de Policía*, 93 D.P.R. 685 (1966). El lenguaje sencillo y absoluto de una ley no puede ser interpretado como que dispone algo que el legislador no intentó proveer, ya que ello conllevaría inmiscuirse en las

funciones de la Rama Legislativa. *Juarbe v. Registrador*, 156 D.P.R. 387, 393 (2002); *Alemán Martínez v. E.L.A.*, 145 D.P.R. 452, 460 (1998); *Lasalle v. Junta de Directores A.C.C.A.*, 140 D.P.R. 694, 696 (1996); *Caguas Bus Line v. Sierra, Comisionado*, 73 D.P.R. 743, 750 (1952). "El intérprete debe abstenerse de sustituir el criterio legislativo por sus propios conceptos de lo justo, razonable y deseable". *Raimundi v. Productora*, 162 D.P.R. 215, 228 esc. 17 (2004) citando a *Alejandro Rivera v. E.L.A.*, 140 D.P.R. 538, 545 (1996).

Por otro lado, en materia de hermenéutica estatutaria, también se ha dispuesto que las leyes que se refieren a la misma materia o tengan el mismo objeto deben ser interpretadas en conjunto de suerte que lo que es claro en una de sus disposiciones pueda ser tomado para explicar lo que resulte dudoso en otra. Art. 18 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 18. Véanse, *Morales v. Adm. Sistemas de Retiro*, 123 D.P.R. 589, 595-596 (1989); *Riley v. Rodríguez Pacheco*, 124 D.P.R. 733, 738 (1989). De esta forma, las leyes o disposiciones *in pari materia* o complementarias pueden ayudar a esclarecer cuál ha sido la verdadera intención legislativa. *Zambrana Maldonado v. E.L.A.*, 129 D.P.R. 740, 750 (1992).

Del mismo modo, también hemos sostenido que las leyes no deben ser interpretadas tomando aisladamente algunas de sus secciones, párrafos, u oraciones, sino que deben serlo tomando en consideración todo su contexto. *Soc. Asist. Leg.*

*v. Ciencias Forenses*, *supra*; *Semidey Ortiz y otros v. Consorcio Sur Central (ASIFAL)*, res. el 22 de diciembre de 2009, 177 D.P.R. ___ (2009), 2009 T.S.P.R. 184, 2010 J.T.S. 3; *Descartes v. Tribunal de Contribuciones*, 71 D.P.R. 248, 253 (1950).

### C

Con el marco teórico esbozado procedemos a resolver la primera controversia aquí planteada.

Según hemos discutido, en nuestro Código Civil se establecen unos requisitos y limitaciones con relación a las personas que pueden presentar una solicitud de declaración de incapacidad, y unos requerimientos y restricciones con relación a aquellos que puedan ejercer la correspondiente tutela.

Por un lado, los Arts. 181 y 182 del Código Civil de Puerto Rico, *supra*, establecen las personas que estarán autorizadas a solicitar la declaración de incapacidad, a saber, el cónyuge o los familiares del presunto incapaz que tengan derecho a sucederle *ab intestato*, o el Ministerio Público en ciertos casos particulares. Por otro lado, el Art. 186 del Código Civil de Puerto Rico, *supra*, indica aquellas personas que podrán ser nombradas como tutores de una persona que sea declarada incapaz y el Art. 195 del citado cuerpo legal señala las personas que estarán impedidas de ejercer tal tutela.

Al analizar cuidadosamente cada uno de estos artículos, nos percatamos de que no existe alguna

disposición en sus textos que permita concluir que una persona que no pueda ser designada como tutor de otra tampoco podrá solicitar la declaración de incapacidad. En otras palabras, no existe expresión alguna que nos permita entender que las circunstancias que prohíben que alguien sea nombrado tutor serán igualmente aplicables a aquellos que deseen solicitar una declaración de incapacidad con relación a la persona sobre la cual recae la solicitud.

Si el legislador hubiese tenido la intención de extender las incapacidades para ser tutor a las personas que vayan a solicitar una declaración de incapacidad, así lo hubiese dispuesto en alguno de los artículos discutidos, en algunas de las disposiciones referentes a tutela o en cualquier otro estatuto que hubiese aprobado a tal efecto. Los tribunales no pueden interpretar el Art. 195 del Código Civil, *supra*, de manera que se entienda que una persona está incapacitada para solicitar una declaración de incapacidad si ocurre alguna de las circunstancias descritas en tal precepto. El así hacerlo costituiría una intromisión indebida en las funciones de la Rama Legislativa.

Por lo tanto, haciendo un análisis integrado de las disposiciones legales antes discutidas entendemos que una persona que cumpla con los exigencias de los Arts. 181 y 182 del Código Civil, *supra*, puede solicitar la declaración de incapacidad de otra independientemente de que luego pueda o no ser nombrado tutor del presunto incapaz.

En el caso ante nuestra consideración, el recurrido es hermano del peticionario. Conforme a los Arts. 903 a 907 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 2671 a 2675, los hermanos de un causante tienen derecho a suceder a éste último en caso de que haya muerto sin haber otorgado algún testamento válido. Por lo tanto, en vista de que el recurrido tiene derecho a suceder al peticionario en caso de éste morir intestado, el recurrido podía solicitar la declaración de incapacidad de su hermano, independientemente de que estuviese o no impedido de ejercer la tutela del peticionario.

### III

En segundo lugar, el peticionario arguye que el recurrido no presentó prueba ni adujo hechos particulares que evidenciaran su incapacidad. Alega que el que tenga una condición mental no es suficiente para que se proceda a nombrarle un tutor, y que la falta de conocimiento o destrezas que pueda tener sobre asuntos económicos complejos no afecta la capacidad que posee para manejar sus bienes.

### A

Según hemos indicado, conforme al Art. 180 del Código Civil de Puerto Rico, *supra*, no se le podrá nombrar un tutor a aquellas personas que puedan padecer de alguna enfermedad o trastorno mental a menos que tal persona previamente haya sido declarada incapaz para administrar sus bienes. No obstante, debemos aclarar que en nuestro

ordenamiento jurídico no existe una expresión clara acerca de las circunstancias que debe evaluar el tribunal al momento de determinar si una persona está o no incapacitada para administrar sus bienes. Es por ello que, además de analizar las normas que se han pautado en nuestra jurisdicción que estén relacionadas con este tema, también estudiaremos diversas fuentes secundarias que nos puedan arrojar luz sobre este aspecto.

En nuestro ordenamiento jurídico, el caso que guarda mayor relación con el tema es *Rivera v. Sucn. Díaz Luzunaris*, 70 D.P.R. 181 (1949). En tal caso la controversia versaba sobre la validez del consentimiento prestado por una persona declarada incapaz judicialmente en un contrato de transacción de derechos hereditarios. Mediante tal acuerdo dicha persona le vendió a su hermano la participación que le correspondía en la herencia del padre de ambos por un precio mucho menor de lo que tenía derecho a recibir.

Aunque en aquel caso este Tribunal entendió que el consentimiento prestado era nulo, al evaluar la validez de tal consentimiento expresamos que la mera prueba de debilidad mental o locura no era suficiente para invalidar un contrato o testamento. Indicamos que el factor determinante al momento de examinar si el consentimiento prestado en un contrato era válido no es si la persona era un loco desde el punto de vista psiquiátrico. Señalamos que el elemento a considerar es "si el contratante, enfermo

mental por razón de su enfermedad, goza de capacidad mental suficiente para darse cuenta de la transacción específica que realiza, considerándola en todos sus aspectos". *Rivera v. Sucn. Díaz Luzunaris*, *supra*, a la pág. 188.

Las expresiones de este caso son de medular importancia al establecer los criterios para determinar si una persona es incapaz para administrar sus bienes. A pesar de que la controversia ante nuestra consideración es distinta a la presentada en *Rivera v. Sucn. Díaz Luzunaris*, *supra*, un enfoque similar a lo dispuesto en tal caso se ha visto reflejado en los comentarios que han hecho algunos tratadistas españoles sobre la declaración de incapacidad.

Al interpretar el Art. 213 del Código Civil Español de 1889, similar al Art. 180 del Código Civil de Puerto Rico, *supra*, Quintus Muscius Scaevola entiende que "no basta la manifestación natural de la incapacidad, es decir, la existencia de locura, demencia, idiotismo, sordomudez, etcétera; [sino que es necesaria] la demostración de incapacidad para administrar sus bienes, porque mal se puede declarar sin demostrar". Q.M. Scaevola, *Código Civil: Comentado y Concordado Extensamente y Puesto Al Día*, 5ta. ed., Madrid, Ed. Reus, 1942, T. IV, pág. 492.

Por otro lado, Luis Diez-Picaso y Ponce de León sostiene que existen enfermedades mentales que anulan el conocimiento, la voluntad y la responsabilidad de una persona; mientras que pueden haber otros padecimientos que no tengan tales consecuencias. Diez-Picazo, *op. cit.*, pág.

293. Por tal razón, opina que al momento de que un tribunal dilucide una acción de declaración de incapacidad es necesario que se demuestre que la incapacidad mental de la persona es tal que la inhabilite para administrar sus bienes y gobernarse a sí misma, o sea, que le impida o dificulte extraordinariamente el que pueda regir sobre sus asuntos e intereses. Diez-Picazo, *op. cit.*, pág. 293.

Como podemos ver, estos autores entienden que no se debe declarar incapaz a una persona por el mero hecho de padecer una enfermedad o debilidad mental. Esta perspectiva plasmada por los tratadistas discutidos también se ha visto reflejada en varias decisiones emitidas por diversas jurisdicciones de los Estados Unidos.

Al momento de declarar a una persona incapaz y designarle un tutor, varios foros estatales también utilizan el criterio de que la persona carezca de capacidad para administrar sus bienes. Véase, a modo de ejemplo, *Matter of Kurt T.*, 64 A.D.3d 819, 881 N.Y.S.2d 688 (N.Y. 2009); *E.P. v. T.K. (In re Conservatorship of T.K.)*, 775 N.W.2d 496 (N.D. 2009); *Cottrell v. Connecticut Bank & Trust Co.*, 175 Conn. 257, 398 A.2d 307 (Conn. 1978); *MacDonald v. La Salle National Bank*, 11 Ill. 2d 122, 142 N.E.2d 58 (Ill. 1957); *In re Knott's Guardianship*, 71 S.D. 53, 21 N.W.2d 59 (S.D. 1945); *State ex rel. Thompson v. District Court*, 118 Mont. 95, 163 P.2d 640 (Mont. 1945). Originalmente, las determinaciones de incapacidad que se llevaban a cabo en estos estados se realizaban tomando en

consideración el status o la condición del sujeto, por ejemplo, si era loco, imbécil, de edad avanzada, entre otras. N.B. Posner, *The End of Parens Patriae in New York: Guardianship Under the New Mental Hygiene Law Article 81*, 79 Marq. L. Rev. 603, 607 (Winter, 1996). No obstante, este criterio fue modificándose con el pasar de los años con el propósito de promover la autonomía individual y proteger a las personas de que se les prive de su libertad innecesariamente. *Íd*. Por tal razón, las leyes en varios estados se enmendaron de modo que las determinaciones de incapacidad se enfocaran menos en meros diagnósticos o etiquetas y utilizaran criterios objetivos que realmente evaluaran las habilidades que posea una persona para regir sobre sus bienes y sobre sí misma. S.B. Hurme, *Current Trends in Guardianship Reform*, 7 MD. J. Contemp L. Issues 143, 157-158 (1995).

Es por ello que en tales foros, aunque la persona sufra de alguna enfermedad o trastorno mental, si la capacidad para manejar sus bienes no se ha visto afectada, los tribunales han rechazado declarar a dicha persona incapaz y proceder a designarle a un tutor. En cambio, el elemento que analizan al momento de establecer si una persona con algún trastorno o debilidad mental es incapaz o no para administrar sus bienes es si su condición mental es de tal grado que le impida a ésta poder entender y desenvolverse en los asuntos cotidianos de la vida. *Harvey v. Meador*, 459 So. 2d 288 (Miss. 1984); *Jaime v.*

*Neurological Hosp. Ass´n of Kansas City*, 488 S.W.2d 641 (Mo. 1973); *State ex. rel. Thompson v. District Court*, *supra*. En otras palabras, han establecido que la determinación de incapacidad debe hacerse cuando se demuestre que la persona no puede velar por su seguridad o no puede atender sus necesidades personales básicas, tales como, su alimentación, albergue, vestimenta, cuidados médicos, entre otros. *In re Boyer*, 636 P.2d 1085 (Utah 1981). Véase, además, *Endicott v. Saul*, 142 Wn. App. 899, 176 P.3d 560 (Wash App. 2008).

Un ejemplo de un caso en el que se determinó que una persona era capaz para administrar sus bienes a pesar de padecer de una condición mental es *Matter of Maher*, 207 A.D.2d 133, 621 N.Y.S.2d 617 (N.Y. App. Div. 1994). De acuerdo a los hechos del caso, el 11 de diciembre de 1992 el Sr. Francis E. Maher sufrió de un derrame que provocó que éste padeciera de hemiplejía en el lado derecho de su cuerpo y de afasia. Debido a que el señor Maher se encontraba parcialmente paralizado y tenía dificultad en comunicarse verbalmente, en escribir y en contar números, su hijo solicitó que se le nombrara un tutor.

Luego de varios incidentes procesales y de que se celebrara una vista en la que declararon varios testigos con relación a la alegada incapacidad del señor Maher, el Tribunal Supremo de New York determinó que el solicitante no había logrado demostrar que su padre era incapaz y que,

por ende, no era necesario el nombramiento de un tutor para administrar sus bienes.

Inconforme, el hijo del señor Maher acudió ante la División de Apelaciones del Tribunal Supremo de New York la cual hizo un análisis cuidadoso de la prueba que constaba en el expediente del caso.

Como parte de la evidencia presentada sobre la capacidad del señor Maher se desprendía que éste había incluido a su esposa como signataria en algunas de sus cuentas de bancos luego de que sufriera el derrame. Además, del expediente surgía que el señor Maher había otorgado un poder autorizando al Lcdo. Irwin Simon para que lo representara en el proceso que se incoó contra él para designarle un tutor. Al analizar tales circunstancias, el tribunal apelativo entendió que el presunto incapaz estaba consciente de sus limitaciones y que podía diseñar un plan para manejar sus asuntos financieros sin la ayuda de un tutor.

Por otra parte, la División de Apelaciones del Tribunal Supremo de New York entendió que el testimonio presentado por los testigos revelaba que el Sr. Francis E. Maher tenía la capacidad para entender la información que se le transmitía y para manifestar sus deseos. En primer lugar, la hermana del señor Maher expresó que su hermano le entendía cuando le informaba a éste asuntos relacionados con su oficina. Segundo, su hijo señaló que frecuentemente conversaba con el señor Maher sobre asuntos financieros y

sobre el manejo del bufete de su padre. Tercero, el doctor Lanyi, fisiatra a cargo de la rehabilitación del señor Maher, expresó que este último estaba consciente de las grandes sumas de dinero que gastaba, que entendía lo que se le preguntaba, y que respondía a tales preguntas de una forma adecuada y calmada utilizando gestos o palabras apropiadas. Por último, el patólogo del habla que atendía al señor Maher señaló que éste demostraba un progreso estable en su habilidad para comprender y responder a las pruebas que se le administraban.

Conforme a las declaraciones de los testigos y a la demás evidencia presentada en el caso, la División de Apelaciones del Tribunal Supremo de New York concluyó que no había necesidad de que se le nombrara un tutor al Sr. Francis E. Maher. Ante tal situación, procedió a confirmar la determinación del tribunal *a quo*.

Como podemos observar, la condición mental del señor Maher no fue suficiente para declararlo incapaz y designarle un tutor ya que su capacidad para administrar sus bienes no se vio afectada como consecuencia de ella. Empero, además de no permitir que se le imponga un tutor a una persona por el mero hecho de padecer una debilidad o condición mental, también se han hecho otras expresiones acerca del manejo de la propiedad que van dirigidas a promover la autonomía personal y limitar las designaciones de tutores a aquellos casos que sean necesarios.

Varios foros han establecido que una persona puede tener la capacidad para administrar sus bienes a pesar de que no los maneje de la forma más apropiada, no tenga los conocimientos o destrezas para manejar asuntos económicos complejos o utilice la ayuda de un tercero para disponer de ellos. Véanse, *In re Estate of Porter*, 463 Pa. 411, 345 A.2d 171 (Penn. 1975); *State ex. rel. Thompson v. District Court*, *supra*. En particular se ha establecido que una persona no tiene que administrar sus bienes de la manera más adecuada o tan bien como otras personas manejan sus propiedades. *State ex. rel. Thompson v. District Court*, *supra*. También, se ha determinado que no es necesario que la persona tenga habilidad o experiencia para manejar sumas de dinero cuantiosas. *In re Estate of Porter*, *supra*. Además, se ha dispuesto que la susceptibilidad a estar influenciado por terceros no implica que se le deba nombrar un tutor a una persona. *State ex. rel. Thompson v. District Court*, *supra*. Aunque ocurran estas situaciones, una persona no es incapaz para administrar sus bienes si puede llevar a cabo transacciones ordinarias con relación al manejo de su propiedad, entiende las consecuencias de sus actos y puede disponer de sus bienes conforme a su voluntad y no la de terceros. Véanse, *State ex. rel. Thompson v. District Court*, *supra*; *Schick v. Sthur*, 120 Iowa 396, 94 N.W. 915 (Iowa 1903).

Un caso en el que se ven reflejadas estas normas es *In re Heath*, 102 Utah 1, 126 P.2d. 1058 (Utah 1942). Según los

hechos, varios herederos del Sr. Joseph A. Heath acudieron ante el Tribunal de Distrito de Utah para solicitar que lo declararan incompetente y le designaran un tutor para administrar sus bienes y su persona. Alegaron que la salud de señor Heath estaba tan deteriorada y su mente tan afectada que éste era incapaz para administrar sus bienes y su persona, y que estaba expuesto a que otras personas lo engañaran y defraudaran.

Luego de que desfilara toda la prueba sometida en el caso, el Tribunal de Distrito de Utah hizo las siguientes determinaciones: (i) que la forma de vivir del señor Heath había causado angustias mentales a sus hijos; (ii) que durante varios años las relaciones de negocio del señor Heath eran llevadas a cabo por su hermano, Henry O. Heath, y su sobrino, Lawrence H. Heath; (iii) que el Sr. Joseph A. Heath y el Sr. Henry O. Heath, eran copropietarios de una parcela de terreno; (iv) que el 10 de junio de 1937, el Sr. Joseph A. Heath otorgó una escritura en la cual transmitió sus derechos sobre dicha propiedad a una corporación que se desarrollaría y se conocería como Heath Development Company; (v) que el Sr. Joseph A. Heath no estaba familiarizado con las disposiciones establecidas en los artículos de incorporación de la mencionada compañía y no entendía la naturaleza de la transacción en la cual cedió su interés sobre la mencionada propiedad; (v) que el Sr. Joseph A. Heath era dueño de varias acciones de la Heath Investment Company y de otra parcela de terreno; y (vi) que

el Sr. Joseph A. Heath era incapaz para administrar sus bienes y su persona por sí solo y que, por tal razón, estaba sujeto a que terceros lo engañaran y defraudaran.

Luego de varios incidentes procesales, el Sr. Joseph A. Heath, el Sr. Lawrence H. Heath y el Sr. Henry O. Heath presentaron un recurso de apelación ante el Tribunal Supremo de Utah. En dicho recurso los apelantes, *inter alia*, alegaron que la prueba presentada no había logrado demostrar que el Sr. Joseph A. Heath era incapaz para administrar sus bienes y su persona.

Luego de evaluar el expediente del caso, el foro supremo del estado de Utah emitió su decisión en la que señaló lo siguiente:

> If the mind functions rationally but the individual acts in a way commonly designated as eccentric--that is, his acts deviate from the usual principally because he is less susceptible to public opinion than are many of us--he is not incompetent. One may love gardening… and not be interested in anything else even to the extent of losing his property at the hands of unscrupulous friends or relatives. He may be foolish in the eyes of many of us, but he is not incompetent. Competency is not measured by one's ability to accumulate and hold the material things of life. Were it so, there would be many of our ministerial brethren--not to mention some of our learned judicial associates--behind mental bars. Material loss in and of itself is a very dangerous bit of evidence from which to reason backward to a conclusion of incompetency. Such loss may be attributable to any number of causes such as indifference, laziness, lack of education, poor business judgment, dislike of a particular class of work or business--there are many possibilities. Thus in passing upon the question of incompetency, we must determine if the evidence of loss is accompanied by evidence of physical or mental defect which interferes with the rational functioning of the mind. Undue influence arising from deep friendship for, or

extreme confidence in others, alone, is not evidence of incompetency of the victim. It may be the instrumentality used upon an incompetent victim but there must be other evidence of that incompetence. Strong mentalities are of times the victims of undue influence.

What about the present case? Counsel for respondents put the alleged incompetent through a very searching, persistent and severe cross-examination on matters pertaining to his business. Many question involved matters of corporate law. What was the result of this examination? **Here is the picture painted of the alleged incompetent: He is ignorant, he lacks interest in business details, he has implicit confidence in his brother and other relatives in whose hands he has placed his affairs; he resents these incompetency proceedings and he much prefers shifting responsibilities to the shoulders of others than to worry with them himself. Such confusion as appears in his answers apparently arises either from defective hearing or ignorance of facts or law but those answers do not show a mind laboring under difficulty in functioning.**

En consecuencia, el Tribunal Supremo de Utah revocó la determinación del Tribunal de Distrito y ordenó que se desestimara la acción en contra del Sr. Joseph A. Heath.

Las expresiones en el caso anterior, así como en las demás decisiones e interpretaciones que se han discutido sobre la determinación de incapacidad, van enfocadas a promover el que las personas retengan la autoridad para regir sobre sus asuntos hasta el mayor grado posible. Ello resulta de gran envergadura debido a los efectos psicológicos negativos que puede tener la declaración de incapacidad.

Cuando se determina que una persona es incapaz, dicho individuo usualmente es marginado. Por un lado, se le restringe la oportunidad de poder interactuar con otras

personas en diversas actividades. L. Salzman, *Rethinking Guardianship (Again): Substituted Decision Making as a Violation of the Integration of Title II of The Americans With Disabilities Act*, 81 U. Colo. L. Rev. 157, 168 (2010). Por otro lado, los tutores generalmente no solicitan o no toman en cuenta los deseos y preferencias del pupilo en cuanto al manejo de sus asuntos. *Íd.*, pág. 169. Ello tiene como consecuencia que la persona incapaz sienta que pierde control sobre su vida, tenga una baja autoestima, se mantenga aislada y decida no participar en diversas actividades cotidianas. *Íd.*

Para evitar exponer a una persona a todos estos consecuencias nefastas sin que ello sea necesario, entendemos que en las acciones de declaración de incapacidad nuestros tribunales no deben descansar meramente en la condición del alegado incapaz, sino que deben enfocar su análisis en la facultad que tenga la persona para tomar decisiones y en las habilidades que posea para administrar sus bienes.

Es por tal razón que resolvemos que al evaluarse una solicitud de declaración de incapacidad el criterio a considerar es si la persona tiene la capacidad para entender y desenvolverse en los asuntos cotidianos de la vida y para ejercer su voluntad discrecionalmente respecto a la forma en que maneja su propiedad. Es decir, la persona debe tener la capacidad necesaria para manejar sus fondos respecto a sus necesidades personales y para realizar todas

aquellas transacciones ordinarias en las que se incurren normalmente en nuestra sociedad.

No obstante, con el propósito de promover que las personas retengan la mayor autonomía posible para regir sobre sus bienes, también resolvemos que los tribunales no pueden exigir el que se posean ciertas destrezas o conocimientos especializados sobre asuntos económicos complejos que una persona promedio no tenga para determinar que alguien es capaz para administrar sus bienes. Aun cuando tales conocimientos pudieran ayudar a obtener un mayor beneficio del manejo de la propiedad, existen ciertos aspectos que muchas personas no entienden o desconocen con relación a la administración de sus bienes y sobre los cuales en ocasiones necesiten la ayuda de terceros. Ello se debe a diversas razones tales como falta de educación, desinterés en el asunto, ausencia de un buen criterio con relación a asuntos de negocio, entre otras. Sin embargo, ese desconocimiento no implica que de por sí estén incapacitados para administrar sus bienes. De lo contrario, serían muchos los que estarían sujetos a tutela y serían pocos los que podrían servir como tutores.

Aunque una persona carezca de tales conocimientos o reciba la ayuda de un tercero al manejar su propiedad, si tiene la habilidad para manejar sus fondos y satisfacer sus necesidades y puede disponer de su propiedad conforme a su voluntad, no debe ser declarada incapaz para administrar sus bienes.

**B**

Es una norma bien asentada en nuestro sistema de justicia que la discreción judicial permea la evaluación de la evidencia presentada en los casos y controversias. *Pueblo v. Miranda Ortiz*, 117 D.P.R. 188, 191 (1086). Los jueces de instancia son quienes están en mejor posición de aquilatar la prueba; por ello su apreciación merece gran respeto y deferencia por parte de los tribunales apelativos. *Íd.* Es por tal razón que los tribunales revisores no deben intervenir con sus conclusiones de hechos y su apreciación de la prueba en ausencia de error manifiesto, prejuicio, parcialidad o pasión. *Íd.* Sólo se podrá intervenir con estas conclusiones cuando la apreciación de la prueba no represente el balance más racional, justiciero y jurídico de la totalidad de la prueba. *Cárdenas Maxán v. Rodríguez Rodríguez*, 125 D.P.R. 702, 714 (1990).

No obstante, a pesar de que existe esta norma de deferencia judicial, también hemos indicado que, cuando las conclusiones de hecho del foro de instancia estén basadas en prueba pericial o documental, el tribunal revisor se encuentra en la misma posición que el foro recurrido. *Sepúlveda v. Depto. de Salud*, 145 D.P.R. 560, 573 esc. 13 (1998). Por lo tanto, el tribunal apelativo estará facultado para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial y hasta descartarla aunque resulte técnicamente correcta. *Mun. de Loíza v.*

*Sucns. Suárez, et al.*, 154 D.P.R. 333, 363 (2001); *Prieto v. Maryland Casualty Co.*, 98 D.P.R. 594, 623 (1970).

## C

Dentro del marco jurídico antes enunciado, y tomando en consideración que nos encontramos en la misma posición que los tribunales inferiores para evaluar la prueba pericial presentada en el caso de autos, procedemos a resolver la segunda controversia ante nuestra consideración.

Según consta del expediente, el Dr. Víctor J. Lladó Díaz y el Dr. Neftalí Olmo Terrón tuvieron la oportunidad de examinar al peticionario y someter sus Informes detallando los hallazgos de sus evaluaciones sobre la forma en que su condición mental afectaba su capacidad para manejar su propiedad. Al analizar cuidadosamente los Informes presentados por ambos doctores, encontramos que la condición psicótica del peticionario no ha sido impedimento alguno para que éste pueda administrar sus bienes. El peticionario no presenta dificultad alguna en el manejo de sus fondos ya que los emplea juiciosamente sin excederse de sus gastos. Éste ha logrado administrar sus fondos de forma independiente y ha podido satisfacer sus necesidades básicas de alimentación, vivienda y cuidados médicos. Por lo tanto, resulta evidente que el peticionario no está incapacitado para administrar sus bienes.

El que el peticionario pueda confrontar problemas al enfrentarse a asuntos gerenciales o financieros complejos

no implica que sea incapaz para administrar sus bienes. Aun cuando sea parte de una comunidad hereditaria que posea bienes cuyo manejo pudiese requerir conocimientos o destrezas de carácter económico superiores a las que posee el peticionario, no se le puede exigir que ostente una preparación o experiencia sobre asuntos económicos que una persona promedio no tiene para que se determine que es hábil para manejar sus bienes. El peticionario ha demostrado que puede manejar sus fondos para satisfacer sus necesidades y desenvolverse en los asuntos cotidianos de la vida sin problema alguno y sin la necesidad de tales conocimientos.

Por otra parte, el que pueda recibir influencias de un tercero al tomar decisiones sobre el manejo de sus bienes tampoco implica que sea incapaz para administrarlos. Inclusive, el peticionario podría solicitarle a otras personas que le ayuden en dicho manejo si entiende que ello es necesario debido a su complejidad.

En este caso, se ha demostrado que el peticionario actúa de forma independiente, conoce del valor del dinero y puede manejar sus ingresos mensuales juiciosamente. Por lo tanto, entendemos que el peticionario tiene la capacidad para disponer de sus bienes conforme a su voluntad y no la de otras personas.

En vista de que el peticionario posee la habilidad para administrar sus bienes de forma plena, no procede la

Demanda de Declaración de Incapacidad y Nombramiento de Tutor incoada por el recurrido.

**IV**

Por los fundamentos expuestos, se expide el auto de *certiorari*, se revoca el dictamen del Tribunal de Apelaciones y se desestima la Demanda incoada en el caso de autos.

Se dictará Sentencia de conformidad.

Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José Guillermo González Hernández | *Certiorari* |
| Recurrido | |
| v. | CC-2009-1001 |
| Enrique González Hernández | |
| Peticionario | |

SENTENCIA

En San Juan, Puerto Rico, a 27 de abril de 2011.

Por los fundamentos expuestos, se expide el auto de *certiorari*, se revoca el dictamen del Tribunal de Apelaciones y se desestima la Demanda incoada en el caso de autos.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez concurren con el resultado sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo